ACCEPTED
05-13-0027-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
4/10/2015 4:57:14 PM
LISA MATZ
CLERK

<u>NO: 05-13-0027-CV</u>

**IN THE COURT OF APPEALS
FIFTH DISTRICT OF COURT
AT DALLAS**

RECEIVED IN
5th COURT OF APPEALS
DALLAS, TEXAS

4/10/2015 4:57:14 PM

LISA MATZ
Clerk

**LAZARUS IROH, ANDREW OKAFOR, LUI AKWURUOHA
CALEB OKEKE AND HENRY NNABUGWU**
*Appellants*

**V.**

**EMMANUEL IGWE**
*Appellee/Cross Appellant*

**V.**

**OBOWU FOUNDATION, DALLAS, INC. and
OBOWU UNION, DFW**
*Cross Appellees*

**ON APPEAL FROM THE COUNTY COURT AT LAW NO: 4
DALLAS COUNTY, TEXAS.
CAUSE NO: CC-11-07596-D**

_____

**APPELLANTS' and INTERVENORS'MOTION FOR REHEARING.**

_____

**ANNISSA R. OBASI
1140 EMPIRE CENTRAL DRIVE
SUITE 205
DALLAS, TEXAS 75247
TEL: 214-631-0282
FAX: 214-631-0900**

# TABLE OF CONTENTS

TABLE OF CONTENTS………………………………………...……....i

TABLE OF AUTHORITIES………………………………..………..ii

ARGUMENT AND AUTHORITIES…………………….…………….1

    **Issue No. 1**: The Court of Appeals erred in concluding that the truth of the Notice's statement was not established as a matter of law. ………………………………………………….………………1

    **Issue No. 2**: The Court of Appeals erred in deciding that the default judgment in favor of Intervenors did not operate as 'res judicata' on Appellants' liability ..………..……………………………..….4

CERTIFCATE OF SERVICE ……………………………………….7

CERTIFICATE OF COMPLIANCE……………….………………..8

# INDEX OF AUTHORITIES

## CASES

*Getty Oil Co, v. Ins, Co of N. Am.,* 845 S.W.2d 790 (Tex.1992)……..…………...4

*Hall Co Texas INC v. McMullen County, 221* S.W. 3d 50 (Tex.2006)…………..4

*Klentzman v. Brady, 312* S.W. 3d 886 (Tex.App. 2014)…………………………. 1

*Milkovich v. Lorain Journal Co,* 497 U.S. 1,11, 110 S.Ct. 2695, 111 L. Ed 2d 1(1990)…………………………………………………………………………………1, 2

*Neely v. Wilson,* 418 S.W. 3d 52 (Tex.2013)……………………………. .…1, 2

*New York Times Inc. v. Isaacks, 146* S.W. 3d. 144 (Tex.2004)…………………... 2

*Parklane Hosiery Co v. Shore, 432 U.S. 322 (1979)*…...……………………… 5

*San Remo Hotel, L.P. v. San Francisco,* 545 U.S. 323, 125 S. Ct. 2491, 162 L.Ed.2d 315 (2005) ………………………………………………...………… 5

**TO THE HONORABLE FIFTH COURT OF APPEALS:**

NOW COMES Appellants LAZARUS IROH, ANDREW OKAFOR, LUI AKWURUOHA, CALEB OKEKE, HENRY NNABUGWU, Appellants, and OBOWU UNION, DALLAS, OBOWU FOUNDATION, INC DALLAS, Intervenors /Cross-Appellees, and respectfully submit this Motion for Rehearing to the Opinion and Judgment issued March 19, 2015 by this Court (Exhibit 1) and request the Court to consider the following:

## ISSUES PRESENTED FOR REHEARING

### Issue 1:

**The Court of Appeals erred in concluding that the truth of Notice's statement was not established as a matter of law.**

Appellants were not required to prove the statement was true. If Appellants only establish that the Notice was substantially true, they are not liable for defamation as a matter of law. 'A notice is substantially true and thus not actionable ,if, in the mind of the average person who reads the statement, the allegedly defamatory statement is not more damaging to the plaintiff's reputation than a truthful statement would have been' *Neely v. Wilson*, 418 S.W. 3d 52 at 63; *Klentzman v. Brady,* 312 S.W 3d 886 at 899 (Tex. App.2014). A person of (average) intelligence 'is one who exercises care and prudence but not

1

omniscience, when evaluating allegedly defamatory communications'. *New York Times Inc. v. Isaacks;* 146 S.W. 3d 144, 157 (Tex. 2004).

At trial, Igwe identified the language '*your subsequent failure to account for the money'* in the Notice as the defamatory statement that accused him of *theft and embezzlement*. No other of Appellee's witnesses identified any accusation of *theft and embezzlement* in the notice. If, as Igwe pointed out, this '*your subsequent failure to account for the money'* language is the defamatory statement, then the notice is substantially true and thus, not actionable. This statement is a statement within a statement (the Notice). This statement cannot be variably false and 'cannot form the basis of a defamation claim'. *Neely v. Wilson at 62 (*quoting *Milkovich v. Lorain Journal Co,* 497 U.S. 1, 11,110 S.Ct. 2695,111 L.Ed.2d 1 (1990). There is no statement of *theft and embezzlement* in the notice. For there to be defamation, a statement is required to be either libel or slander. (*Neely v. Wilson, Id at 60.* Even the trial court conceded that the word '*taken from the account'* in the notice doesn't necessarily mean '*theft'* which was pled. (See RR. Vol. 4 page 174, line 19-20). Whether the 'notice' is defamatory on this ground is a legal issue and the trial court even suggested, while ruling on appellants' directed verdict motions, that a JNOV would be an appropriate remedy when the court says;

> I think I should see how the jury deals with the questions… if he (Igwe) … has for some reason hurt himself … by pleading too specifically,

2

and we were wrong about the facts, then I suppose , there is a finding against any of the Defendants, I could clean up later ' (RR Vol.4. Pg 174: 13-22).

As further reason why a JNOV would be an appropriate remedy, the trial court explains during the hearing on directed verdict that '

> What you have here is a cause of action that was brought where
> The specific allegation of libel (**defamation**) does not match with evidence that is on the record. (Emphasis added)(RR.Vol.4 Pg. 174: 1-3).

Additionally, the appeals court erred when it acknowledged appellants' general special exception but goes on to state that appellants 'failed to obtain a hearing or ruling on the special exception  and so the complaint is waived' (opinion at Pg. 7).  Appellants contend that in fact a hearing on the exception was held and it was denied when appellants raised the issue again during appellants' directed verdict motions. (See RR. Vol. 4 Pgs. 164: 22-25; 168: 20-25; 169: 1-35; 170: 1-25). Although it is arguable whether the trial court's denial of appellants' directed verdict motions was on a question of fact, the court plainly based its denial on a question of law, with a hint that it would clear it up later. The trial court was wrong when, despite its reservations, it denied appellants JNOV request on this legal issue and the Appeals court erred when it affirmed the denial.  Appellants were entitled to a JNOV.

3

**Issue 2:**

**The Court of Appeals erred in deciding that the default judgment in favor of the Intervenors did not operate as 'res judicata' on Appellants' liability**.

The Court of Appeals concluded and Appellants concede that the Intervenors' judgment was not on the merits. But the Court also states that Appellants are not the same parties as Intervenors, and Igwe's claim is not the same as Intervenors. To the extent that Appellants demonstrated at trial the privity between them and the Intervenors, Appellants would respectfully disagree. The doctrine of 'res judicata' "'bars a second action by parties and their privies on matters actually litigated in previous suit, as well as claims' which, through the exercise of diligence, could have been litigated in a prior suit.'" *Hall Co Texas INC v. McMullen County,* 221 S.W.3d 50 (Tex.2006) (quoting *Getty Oil Co, v. Ins. Co of N. Am.*, 845 S.W.2d 790 (Tex. 1992). Appellants contend that when a claimant, by his lack of diligence allows a judgment be taken against him, the claimant cannot prevent a third party in privity from asserting the fact of the judgment as a defense. Certainly a contract claim (as the Intervenors' claim is) is distinct from one based in tort (as Igwe's claim is), but if the claims arise out of the same subject matter and can be brought together, they cannot be asserted separately. *Hall Co Texas INC v. McMullen ,* Id. at 59 (quoting *Getty Oil,* Id at 798).

Clearly Appellants established their privity with Obowu Union Dallas and Obowu Foundation, Dallas Inc. At the time Intervenors cause of action arose, the appellants were officers of the Union as well as directors of the Foundation. Igwe's claim was based on the Notice authorized by the Union and concerning the Foundation matter. The evidence and/or factors necessary to assess the defamatory nature of the notice, the validity of the default judgment in favor of the Intervenors, and the legal grounds upon which the court of appeals resolved the trial court's denial of Igwe's motion for new trial would preclude upholding any finding of liability against Appellants. Specifically, the court of appeals affirmed the trial court's final default judgment against Igwe.

Res judicata serves a vital public interest, by promoting the finality of (judgments), and preventing needless repetitive litigation. *Hall,* Id. at 58 (quoting *San Remo Hotel, L.P. v. San Francisco,* 545 U.S. 323, 345; *Hall,* Id. at 58 (quoting *Getty Oil,* Id. at 798). *(*citing *Parklane Hosiery Co v. Shore,* 432 US, 322 (1979). To this end appellants request the court to take judicial notice that on March 27, 2015, barely a week after the court issued its opinion, Igwe filed an additional lawsuit against two principal appellants herein and two other members of Intervenors, Obowu Union, Dallas. That lawsuit is currently pending in the Dallas County Court at Law Number One in cause number CC-15-01548-A. It is this

type of needless repetitive litigation that courts have recognized the doctrine of res judicata prevents.

A remand to the trial court for a judgment notwithstanding the verdict is the appropriate remedy in this case.

Igwe has requested a new trial on Intervenors' default judgment. If the Court of Appeals is inclined to do so upon rehearing, appellants request that judgment against them be vacated and a remand ordered in the alternative. Appellants believe it is possible, and highly likely that Intervenors, Obowu Union Dallas and Obowu Foundation, Dallas Inc., would prevail in any trial on the merits. If that happens, Appellants are entitled to raise the outcome as a defense in Igwe's defamation claim.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, LAZARUS IROH, ANDREW OKAFOR, LUI AKWURUOHA, CALEB OKEKE, HENRY NNABUGWU, Appellants and OBOWU UNION, DALLAS, OBOWU FOUNDATION, INC. DALLAS, Intervenors/Cross-Appellees, pray that this Honorable Court grant this Motion for Rehearing, withdraw is opinion affirming the trial court's final judgment against appellants, and remand and render a Judgment Not Withstanding the Verdict (JNOV) in favor of Appellants or, in the alternative, set aside the

6

judgment against appellants and order a new trial should the court remand for trial on the merits on Intervenors'/Cross-Appellees' default judgment.

Furthermore, Appellants and Intervenors/Cross-Appellees pray for such other and further relief as they may be justly entitled.

Respectfully Submitted

*/S/ Annissa R. Obasi/*

By _____

Annissa R. Obasi
TBN: 24004841
1140 Empire Central Dr., Suite 205
Dallas, Texas 75247
Tel: 214-631-0282/214-631-2500
Fax: 214-631-0900
Attorney for Appellants and Cross-Appellees

## CERTIFICATE OF SERVICE

The undersigned Counsel certifies that a true and correct copy of Appellant's and Cross-Appellees' Motion for Rehearing was served on the following parties:

1. J.B. Peacock, Jr., Attorney at Law
   Gagnon, Peacock & Vereeke, P.C.
   4245 N. Central Expressway, Suite 250
   Lock Box 104
   Dallas, Texas 75205
   Via fax at (214) 824-5490

7

## <u>CERTIFICATE OF COMPLIANCE.</u>

1.  This Motion Complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it was prepared in proportionally spaced typeface (Roman Times Newman, 14-point font) with Microsoft Word 2003.


*/S/ Annissa R. Obasi/*

By _____

Annissa R. Obasi

Attorney for Appellants and Cross-Appellees

EXHIBIT 1

**Affirmed and Opinion Filed March 19, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00027-CV

**LAZARUS IROH, ANDREW OKAFOR, LUI AKWURUOHA, CALEB OKEKE, AND HENRY NNABUGWU, Appellants**

**V.**

**EMMANUEL IGWE, Appellee/Cross Appellant**

**V.**

**OBOWU FOUNDATION DALLAS, INC. AND OBOWU UNION DFW, Cross Appellees**

**On Appeal from the County Court at Law No. 4**
**Dallas County, Texas**
**Trial Court Cause No. CC-11-07596-D**

## OPINION

Before Justices Bridges, Fillmore, and Schenck[1]
Opinion by Justice Bridges

A jury found that appellants Lazarus Iroh, Andrew Okafor, Lui Akwuruoha, Caleb Okeke, and Henry Nnabugwu defamed appellee Emmanuel Igwe and awarded actual and exemplary damages to Igwe. The trial court signed a judgment that incorporated both the jury's findings and a partial default judgment in favor of cross appellees. In a series of issues, appellants challenge the trial court's judgment against them and argue the trial court should have granted them judgment as a matter of law or a new trial. In a single cross issue, Igwe challenges the default-judgment portion of the trial court's final judgment. For the reasons discussed below, we affirm the trial court's judgment.

---

[1] Justice David Schenck succeeds Justice Michael O'Neill, a member of the original panel. Justice Schenck has reviewed the briefs and record in this case. *See* TEX. R. APP. P. 41.1(a).

BACKGROUND

Appellee Igwe and appellants were all officers or members of the Obowu Union DFW (the Union), an organization of individuals from the Obowu village in Nigeria. Iroh served as chairman of the Union; Okafor was its vice-chairman; Akwuruoha was its legal advisor. The Union is the local branch of Obowu Development Union USA, Inc. (ODUUS); Igwe served as chairman of ODUUS during the relevant time. Igwe also served as chairman of Obowu Foundation Dallas, Inc. (the Foundation), a charitable corporation created by the Union, which undertook projects to improve life for residents of Obowu in Nigeria.

The project at the center of this litigation was a $15,000 grant from the Union to the Foundation for tables and chairs for elementary schools in Obowu. Igwe withdrew the $15,000 and contracted for the furniture to be built in Nigeria. The parties dispute whether Igwe's actions were authorized by the Foundation board. Igwe contends the withdrawal and project were approved by the board. He does concede that board members did not agree on the execution of the project. Indeed, according to Igwe, his board members frequently refused to attend meetings and, when they did, they pressed to give contracts to their own friends or family back home. In the end, in the summer of 2009, Igwe withdrew the money and contracted for the work himself.

Union leaders say they learned of the withdrawal of the $15,000 in November 2009. They appointed a committee to determine whether Igwe had mismanaged the funds. Igwe explained to the committee the problems he had with obtaining attendance of his board members and with their efforts to favor friends with the contracts. The committee issued a written report in June 2010, acknowledging the "excessive lack of cooperation among board members," but also concluding that Igwe "read too much" into his authority for day-to-day operations of the Foundation. In the end the committee recommended Igwe should return the funds to the Foundation's account.

Igwe contends he gave the Union board documents that accounted for all of his expenses on the project. Witnesses also testified Igwe presented detailed financial information and pictures of the furniture to the Union assembly at its July 2010 meeting. At that same meeting, however, appellee Okeke made charges against Igwe linking him with theft of Foundation funds.

The Union board appointed a second committee to evaluate the project itself; the committee's report was issued in November 2010. The report concluded the project was ongoing but that Igwe had "overreached his powers," and that all Foundation board members "failed in their responsibilities" including attending meetings. The report recommended that Igwe and the entire Foundation board step down. It further recommended that Igwe be compelled to refund the $15,000 if he could not deliver the completed project by December 31, 2010, which members understood to be the date work was guaranteed to be finished.

The Union board then appointed a third committee, made up of members who planned to return to Nigeria for the Christmas holiday that year. Appellants contend Igwe was to meet with this committee in Obowu and to turn over the furniture. However, Igwe did not go home for Christmas in 2010. At the Union's January meeting, members voted to give Igwe ninety days to refund the $15,000; he did not do so. Igwe contended at the time that the furniture was built and the project was complete except for the need for an additional $1500 for spraying costs. The Board refused to pay any more toward completing the contract, and when a Union member offered to pay the $1500 himself to resolve the shortfall, the Board rejected the offer. Appellants contend they saw no evidence of furniture until the current litigation, but at least one witness testified at trial that he had seen the furniture in Nigeria.

At the Union's meeting in May 2011, a vote was taken, and Igwe was suspended from the organization. The Notice of Suspension (the Notice) was addressed to Chief Sir Emmanuel Igwe and stated:

–3–

<u>Notice of Suspension</u>

> I have been directed to notify you that your membership in Obowu Union, DFW has been suspended effective May 1, 2011.
>
> In a unanimous resolution adopted at the general meeting of Obowu Union, DFW held on May 1, 2011 the assembly suspended you indefinitely from the Union.
>
> This resolution was as a result of your non-compliance with the Union's directive that you refund the sum of $15,000.00 taken from the Obowu Foundation, Dallas Inc. account and your subsequent failure to account for the money.
>
> This resolution to suspend your membership from the Obowu Union does not affect your rights to appeal pursuant to the Union's bye-laws [sic] and standing resolutions.

The Notice was signed by Akwuruoha as Legal Adviser, and verified by Iroh as chairman and Okafor as vice-chair. The Notice bore the notation: "Cc: All relevant authorities both civil and legal." Appellants contend the Notice was sent only to those who needed to know: related organizations and—when Igwe attempted to attend a meeting after being suspended—the Dallas Police Department. There was evidence, however, the Notice was posted on the Union's website, was circulated by email by appellant Nnabugwu, and reached both leaders of the Obowu village in Nigeria and the Internal Revenue Service. Ultimately, Igwe sued the five individual appellants for defamation.

After some time, the Union and Foundation intervened in the lawsuit, contending Igwe had exceeded his authority and seeking reimbursement of the $15,000 Igwe had allegedly "misappropriated." But Igwe's father passed away the day after he was served, and he traveled to Nigeria immediately. When Igwe returned, he gave the plea in intervention to his attorney, but the latter did not file an answer. Approximately four months after Igwe was served, the Union and the Foundation moved for a default judgment. The trial court granted the motion and signed a partial default judgment in favor of the intervenors for the $15,000 plus attorney's fees.

–4–

The judgment states it is interlocutory and "subject to the disposition of the remaining claims between the parties."

A jury trial was held on Igwe's defamation claims. The jury found in favor of Igwe, awarding actual damages against all five defendants in the total amount of $143,101 and exemplary damages against all defendants except Nnabugwu in the total amount of $105,000. The trial court expressly incorporated the partial default judgment in favor of the intervenors into its final judgment. Appellants filed their combined Motion for Judgment Notwithstanding the Verdict, Motion to Disregard Jury Findings and Motion for New Trial. The trial court denied the combined motion in its entirety.

This appeal and cross appeal followed.[2]

## APPELLANTS' MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

Appellants' first issue argues the trial court erred in denying their motion for judgment notwithstanding the verdict.[3] The trial court should grant a motion for JNOV when (1) the evidence is conclusive and one party is entitled to recover as a matter of law, or (2) a legal principle precludes recovery. *COC Servs., Ltd. v. CompUSA, Inc.*, 150 S.W.3d 654, 662 (Tex. App.—Dallas 2004, pet. denied). This first issue includes four discrete arguments that, according to appellants, preclude recovery by Igwe. We review legal issues within appellants' motion de novo. *Id.* We review evidentiary issues within the motion by asking whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict they did, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller*, 168 S.W.3d at 827.

---

[2] Appellants filed a motion to strike the cross appeal based on the timing of Igwe's notice of appeal. We denied that motion.

[3] When listing their issues, appellants cast this first issue in terms of a directed verdict. But the briefing as a whole addresses and is based on appellants' motion for JNOV. We treat the issue in terms of a JNOV but note that the standard of review for either analysis is the same. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005) ("the test for legal sufficiency should be the same for summary judgments, directed verdicts, judgments notwithstanding the verdict, and appellate no-evidence review").

**A.** *Variance*

Appellants first contend that Igwe's pleading of his claim for defamation does not comport with the trial court's judgment. Appellants point to the fact statement in Igwe's petition, which alleges that:

> Defendants Akwuruoha, Iroh, and Okafor then published a notice of [Igwe's] suspension for theft and embezzlement, and circulated it to the members of the Union and the Foundation. Moreover, Defendant Nnabugwu posted slanderous statements falsely accusing [Igwe] of embezzlement and the suspension on the internet, which was circulated through email to members of the Union, the Foundation, and [Igwe's] community.

Appellants point as well to Igwe's contention in pleading the cause of action of defamation that:

> Defendants published statements by oral and written communication asserting as fact that [Igwe] had embezzled and stolen funds allotted for the Project.

The gist of appellants' complaint is that Igwe did not prove, and the judgment does not support, that appellants charged Igwe with "theft" or "embezzlement" as Igwe pleaded.

Appellants' focus in this issue is on the jury charge's Question No. 1, which referenced appellants Iroh, Okafor, Akwuruoha, and Nnabugwu, and asked:

> Did any of the Defendants publish that Emmanuel Igwe took $15,000 from Obowu Foundation and failed to account for the funds?

The jury answered the question affirmatively as to those four defendants, and the trial court's judgment against them was based on that finding, together with the subsequent finding that the published statement was false when made. According to appellants, the difference between Igwe's pleading and the trial court's judgment resulted in "a fatal variance." We disagree.

It is true, as appellants assert, that "[a] party must recover on the right in which he sues and upon proof of the facts stated in his pleadings, and he cannot recover through a right not asserted." *USX Corp. v. Salinas*, 818 S.W.2d 473, 481 (Tex. App.—San Antonio 1991, writ denied). However, courts have rarely found a variance between pleadings and proof to be harmful error. *Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 937 (Tex. 1980). "To be

–6–

reversible error, the variance must be substantial, misleading, constitute surprise, and be a prejudicial departure from the pleadings." *Id*. at 938. In a defamation case, when a defendant complains that the statement proved is substantially different from the statement pleaded by the plaintiff, we ask whether the different statements would affect the reader or listener differently. *Shihab v. Express-News Corp.*, 604 S.W.2d 204, 208 (Tex. Civ. App.—San Antonio 1980, writ ref'd n.r.e.). "If the effect on the mind of the recipient would be the same, any variance between the misconduct charged and the misconduct proved should be disregarded." *Id.* We look for the "gist" or "sting" of the statement alleged when determining its effect on the listener. *See id.* at 207.[4]

We apply this standard within the framework of our system of notice pleading. Thus, Igwe's petition is sufficient if it gave fair and adequate notice of the facts upon which he based his defamation claim so that appellants were able to prepare a defense to that claim. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896–97 (Tex. 2000). Moreover, we construe pleadings liberally in favor of the pleader when a party fails to specially except. *Id.* at 897. In this case, appellants did include a general special exception in their answer stating the petition did not give them "fair notice" of the nature and basic issues of the controversy, but they failed to obtain a hearing or ruling on the special exception, so that complaint is waived. *See, e.g., Cooper v. Cochran*, 288 S.W.3d 522, 531 (Tex. App.—Dallas 2009, no pet.).

With these rules in mind, we compare Igwe's petition to the first question asked the jury. Appellants focus on Igwe's pleaded assertion that they had published a notice of Igwe's suspension for "theft" and "embezzlement." We ask what a reasonable listener or reader would understand by these terms. *See Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002) (meaning of

---

[4] For example, the *Shihab* court concludes that if the gist of an alleged defamation was that a journalist fabricated a story, "the damage to a reporter's reputation stems from the charge of fabrication, and it can be concluded that there is no more opprobrium attached to the fabrication of one story than to the fabrication of another." 604 S.W.2d at 207.

a publication depends on reasonable person's perception). Embezzlement is defined as "fraudulent appropriation of property by a person to whom it has been entrusted." WEBSTER'S THIRD NEW INT'L DICTIONARY 739 (1981). Theft is defined as "the act of stealing or the taking of property unlawfully." *Id.* at 2369. We conclude a reasonable person would understand Igwe's pleading to mean appellants accused him of an unlawful taking of the Foundation's property that had been entrusted to him.

The pleading identified the factual source of the statement at issue in Question No. 1, which was the Notice. The Notice stated Igwe's suspension "was as a result of your non-compliance with the union's directive that you refund the sum of $15,000.00 taken from the Obowu Foundation, Dallas Inc. account and your subsequent failure to account for the money." Again, looking for the plain meaning of this language, "account for" is defined as "to furnish a justifying analysis or a detailed explanation of one's financial credits and debits or of the discharge of any of one's responsibilities." *Id.* at 13. We conclude a reasonable reader or listener would understand the Notice to say: Igwe was suspended because he took $15,000 from the Foundation; the Union demanded he return the $15,000; he failed to comply by returning the money; and he failed to explain what he had done with the money.

Viewing Igwe's pleading liberally, as we must, he alleged the Notice accused him of unlawfully taking $15,000 from the Foundation. We infer the taking was considered wrongful given that (1) the Union demanded the money be returned, and (2) Igwe did not provide an explanation of what he had done with the money. Thus, we see no significant variance between Igwe's pleading and the Notice that formed the factual basis for that pleading. Question No. 1 asked: "Did any of the Defendants publish that Emmanuel Igwe took $15,000 from Obowu Foundation and failed to account for the funds?" We conclude the question captures the gist of the pleading and the statement published in the Notice: Igwe allegedly took the money from the

Foundation and failed to provide an explanation of what he did with the money. There is no variance among the pleading, publication, and jury question that could be characterized as "substantial, misleading, constitut[ing] surprise, [or] a prejudicial departure from the pleadings." *See Brown*, 601 S.W.2d at 938. Appellants were given fair notice of Igwe's complaint and were specifically on notice that they needed to prepare a defense to the publication in the Notice. *See Horizon/CMS Healthcare Corp*, 34 S.W.3d at 896–97.

Appellants rely on *USX Corp. v. Salinas*, 818 S.W.2d 473 (Tex. App.—San Antonio 1991, writ denied) to support their variance argument. *Salinas* is a product liability case involving a defective hydraulic cylinder. The cylinder was a part of an oil rig elevator, and the defect allegedly caused the elevator to collapse. *Id.* at 477. The plaintiffs' petition identified the product at issue as the "elevator" and its component part, the "hydraulic cylinder." *Id.* at 480. USX contended the plaintiffs re-characterized the product at trial as a "component rig package," but the trial court allowed the case to be submitted in terms of the "component rig package." *Id.* at 481. USX argued it was prejudiced by this variance, saying it prepared for trial on the basis of the products named in the pleading. *Id.* The San Antonio court concluded there was no substantial or misleading variance. The court relied on the testimony at trial that a "rig package" was "a collection of equipment, units, and components that were to go into a designated rig" and that USX had sold the rig package—which apparently included the elevator and its hydraulic cylinder—to the drilling company. *Id.* at 482. We conclude *Salinas* does not compel reversal on the ground of variance. On the contrary, *Salinas* teaches the pleadings need not mirror the proof so long as the variance between them is not substantial and misleading. *See id.*

We conclude Igwe's pleadings and the proof at trial would have the same effect upon a listener: in both cases, Igwe was accused of wrongly taking money and failing to account for its use. *See Shihab*, 604 S.W.2d at 208. Accordingly, any insubstantial variance between the

–9–

misconduct charged and the misconduct proved should be disregarded. *Id.* We overrule issue 1A.

**B.** *Qualified Immunity*

Appellants argue they are protected from liability for Igwe's defamation claim by qualified immunity or privilege. Such a privilege does attach to good-faith communications "upon any subject in which the author or the public has an interest or with respect to which the author has a duty to perform to another owing a corresponding duty." *Hanssen v. Our Redeemer Lutheran Church*, 938 S.W.2d 85, 92 (Tex. App.—Dallas 1996, writ denied). A party claiming the privilege must use the privilege in a lawful manner and for a lawful purpose. *Id.* The communication must be made without malice. *Id.* Qualified immunity is an affirmative defense, in the nature of confession and avoidance. *Gen. Motors Acceptance Corp. v. Howard*, 487 S.W.2d 708, 711 (Tex. 1972). Accordingly, the defendant asserting the qualified privilege has the burden to plead and prove that the statement made is privileged.[5] *Id.* In addition, the defendant must obtain favorable jury findings in support of its defense. *Denton Pub. Co. v. Boyd*, 460 S.W.2d 881, 882 (Tex. 1970). Our record does not indicate appellants requested a jury question on their qualified immunity defense, and we have no findings on the matter. Appellants' failure to seek such findings is a waiver of their immunity defense. *See id.* at 885. We overrule issue 1B.

**C.** *Appellants' Capacity*

Appellants contend they signed the Notice, and published its contents, merely as officers or representatives of the Union, so they cannot be liable for defamation in their individual capacity. This defense was raised as a special exception in the December 8, 2011 Defendants' First Amended Original Answer, Special Exceptions, Request for Jury Trial, and Obowu

---

[5] Despite some confusion in the briefing, appellants did plead this affirmative defense in their First Amended Original Answer, filed July 25, 2012.

Foundation Dallas, Inc.'s & Obowu Union DFW's Amended Plea in Intervention. Appellants do not cite us to a ruling on these special exceptions, to any affirmative pleading by them raising the issue, or to evidence that the issue was tried by consent below. Appellants also cite no authority supporting their contention that they are not personally liable for their intentional torts, apart from their claim of qualified privilege, which we have rejected. *See Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex. 2002) (discussing "Texas' longstanding rule that a corporate agent is personally liable for his own fraudulent or tortious acts").

Subject to waiver and trial by consent, a pleading that a defendant is not liable in the capacity in which he is sued must be verified by affidavit. TEX. R. CIV. P. 93(2). We conclude that appellants have demonstrated no error in relation to their capacity, and we overrule issue 1C.

**D.    *Truth of Statements***

In their final argument for judgment notwithstanding the verdict, appellants contend they were entitled to judgment as a matter of law because the statements within the Notice were true. Truth, of course, is a complete defense to defamation. *Austin v. Inet Technologies, Inc.*, 118 S.W.3d 491, 496 (Tex. App.—Dallas 2003, no pet.) (citing *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995)); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 73.005 (West 2011) ("The truth of the statement in the publication on which an action for libel is based is a defense to the action."). It is possible that truth—or at least substantial truth—can be determined as a matter of law. *See, e.g., Inet Technologies*, 118 S.W.3d at 496. However, if evidence of the underlying facts of the defamatory charge is disputed, then the statement's truth—or falsity—must be determined by the finder of fact. *Neely v. Wilson*, 418 S.W.3d 52, 64 (Tex. 2013).

In this case, Igwe presented evidence that the reason given for his suspension was false. He testified that the Foundation board authorized him to withdraw the $15,000. He also

presented both testimony and documentary evidence that he had accounted for the money.  Frank Eleke, who was the founding president of the Union, testified he was serving as the Union's "observer" of the Foundation board when it authorized Igwe to withdraw the funds for the project the Board had approved.  Thus, there was evidence that the Notice's statement that Igwe had taken the money and failed to account for it was not true.

We conclude the truth of the Notice's statements was not established as a matter of law. The issue was for the factfinder, and the trial court properly submitted the question to the jury. *See id.*  We overrule issue 1D.

We conclude the trial court did not err in denying the motion for judgment notwithstanding the verdict on the basis of any of these issues; we overrule appellants' first issue in its entirety.

### APPELLANTS' MOTION TO DISREGARD JURY FINDINGS

In their second issue, appellants contend the trial court erred in failing to disregard certain answers of the jury and, therefore, to render judgment as a matter of law.  A trial court may set aside a jury finding only when there is no evidence to support the finding.  *Campbell v. Nw. Nat'l Life Ins. Co.*, 573 S.W.2d 496, 497 (Tex. 1978); *see also Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003) (we affirm trial court's decision to grant judgment as matter of law if there is no evidence to support one or more jury findings on issues necessary to liability). Again, we review the no-evidence issues within appellants' motion by asking whether the evidence at trial would enable reasonable and fair-minded people to reach that verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not.  *City of Keller*, 168 S.W.3d at 827.  Within that framework, however, the factfinder is the sole judge of the credibility of the witnesses and the weight to be given their testimony.  *See Creech v. Columbia Med. Ctr. of Las Colinas Subsidiary, L.P.*, 411

–12–

S.W.3d 1, 6 (Tex. App.—Dallas 2013, no pet.). To prevail on his defamation cause of action, Igwe was required to prove that appellants: (1) published a statement (2) that was defamatory concerning Igwe, (3) while acting with negligence regarding the truth of the statement. *See WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).

Appellants challenge ten of the trial court's eleven jury questions as being unsupported by evidence at trial.[6] We address the challenged questions in turn.[7]

> **QUESTION NO. 1**: Did any of the Defendants publish that Emmanuel Igwe took $15,000 from Obowu Foundation and failed to account for the funds?

This first question was limited to defendants Iroh, Okafor, Akwuruoha, and Nnabugwu, and the jury answered the question "yes" as to all four. Appellants contend there is no evidence to support that answer. Appellants also repeat arguments we have resolved above, including issues concerning variance and the adequacy of Igwe's pleading. Our sole focus in this issue is whether the record contains sufficient evidence to support the jury's three-part finding that appellants (a) published (b) that Igwe took $15,000 from the Foundation and (c) failed to account for those funds.

Appellants do not challenge that Iroh, Okafor, and Akwuruoha published the Notice on which this question is based; those three men signed the Notice itself. Appellants do challenge whether Nnabugwu published the Notice. In his deposition taken before trial, Nnabugwu admitted he had forwarded the Notice to his friend Ben Nwobasi. He denied having done so at trial, but the jury heard the impeaching deposition testimony. In the face of this conflicting testimony, the question was for the jury. *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 521 (Tex. 1997) ("When, as here, conflicting evidence exists on an issue, the jury's verdict is

---

[6] Appellants do not challenge the jury's response to Question No. 6, which assigned a percentage of responsibility to each of the four defendants addressed in Questions No. 1, 2, and 5.

[7] When quoting each question, we omit accompanying instructions.

–13–

generally conclusive on such matters as the weight given to the evidence and the credibility of witnesses.").

Appellants do not challenge evidentiary support for the jury's finding that they published Igwe took $15,000 from the Foundation. The Notice they signed and distributed contained the unambiguous statement that Igwe had failed to comply with the Union's directive that he return "the sum of $15,000 taken from the Obowu Foundation, Dallas Inc. account."

Appellants do challenge the sufficiency of evidence supporting the finding "that Igwe failed to account for the funds." Appellants argue the finding's language does not correctly reflect what they wrote in the Notice. They argue the Notice's reference to Igwe's "subsequent failure to account for the money" is limited to the time after the Union directed him to return the $15,000, and the jury question is not so limited. We see no difference in how a recipient of the Notice would react to the statement concerning accounting based on the distinction appellants draw involving timing. The gist of the Notice is that Igwe took money from the Foundation without giving a legitimate explanation for its use. Regardless of when appellants demanded the explanation, the Notice conveys dishonesty by Igwe.

We conclude there is ample evidence supporting the jury's answer. The evidence presented at trial would enable reasonable jurors to find that each of the named appellants published the statement in the question. *See City of Keller*, 168 S.W.3d at 827. The trial court did not err in refusing to disregard the jury's answer to Question No. 1.

> **QUESTION NO. 2:** Was the statement described in Question No.1 false at the time it was made about Emmanuel Igwe?

We concluded above that the issue of the truth or falsity of the statements in the Notice could not be determined as a matter of law and was an issue for the jury. As we have observed, Igwe presented evidence that the reason given for his suspension was not true. He and Eleke testified the Foundation's board authorized Igwe to withdraw the $15,000. Appellants also

–14–

challenge the evidentiary support for an accounting in any event. They point to their own testimony that they never saw any of the accounting documents relied on by Igwe until they were produced in this litigation. But Igwe testified he gave those documents to the Union board, and both Timothy Nwokori, the Union secretary, and Eleke testified that Igwe gave an explanation of all the funds for the project at a general meeting of the Union. Igwe introduced the documentary evidence at trial. "The defendant's state of mind can—indeed, must usually—be proved by circumstantial evidence." *Bentley*, 94 S.W.3d at 596. We conclude Igwe's evidence was sufficient to allow reasonable jurors to infer appellants were negligent as to the falsity of the statement that "Igwe took $15,000 from Obowu Foundation and failed to account for the funds." *See City of Keller*, 168 S.W.3d at 827. The trial court did not err in refusing to disregard the jury's answer to Question No. 2.

> **QUESTION NO. 3:** Did Defendant Caleb Okeke publish that Emmanuel Igwe had stolen funds of Obowu Foundation Dallas, Inc. that had been given to the Foundation by Obowu Union DFW membership for the construction of tables and chairs that were to be used in Nigerian classrooms?

Appellant Okeke was not involved in creating the Notice, but Igwe contended—and the jury found—Okeke had defamed Igwe through statements made in other contexts. Union secretary Nwokori testified at trial from the minutes he took at the July Union meeting. Nwokori read the following excerpts relating to Okeke's statements at that meeting:

> He also stated that every Obowian supported ODUUS until the problem came up, which problem was embezzlement of funds according to him. He said that ODUUS leadership is not in order, that the ODUUS leader was accused of a crime here in Dallas, and the leader should step down.
>
> * * *
>
> That it is up to 12 months. He made it clear to the union that Mr. Boniface Anuolam and Chief Sir Emma Igwe stole the union's money, adding that the chairman should tell the union what the committee's recommendations are.

Okeke testified and denied ever accusing Igwe of embezzlement. But when asked about the above-quoted comments, Okeke stated:

–15–

I was referring to noncompliance of giving us the $15,000 or that we receive the chairs and tables that were -- that supposedly was produced in Nigeria. . . . because we didn't receive those things; the innocent children of Nigeria are still suffering without those things, that they don't have the chairs and we don't have the money.

Reasonable jurors could have found Nwokori credible rather than Okeke and could have concluded Okeke stated at a meeting of Union members that Igwe stole the money intended for the Nigerian schools project. *See id.* The trial court did not err in refusing to disregard the jury's answer to Question No. 3.

> **QUESTION NO. 4:** Was the statement described in Question No. 3 false at the time it was made about Emmanuel Igwe?

As we have stated, Igwe produced sufficient evidence for reasonable jurors to conclude that he had authority to use the $15,000 from the Foundation as he did, that the tables and chairs were in fact built with that money, and, therefore, that he did not steal the funds. Indeed, there was evidence that Igwe gave the Union his accounting of the funds at the same July meeting at which Okeke made the statements alleged. Reasonable jurors could infer Okeke was negligent as to the falsity of the statements he made. *See id.*; *see also Bentley*, 94 S.W.3d at 596. The trial court did not err in refusing to disregard the jury's answer to Question No. 4.

> **QUESTION NO. 5:** What sum of money, if paid now in cash, would fairly and reasonably compensate Emmanuel Igwe for his injuries, if any, that were proximately caused by the published statement described in Question No.1?

> **QUESTION NO. 9:** What sum of money, if paid now in cash, would fairly and reasonably compensate Emmanuel Igwe for his injuries, if any, that were proximately caused by the published statement described in Question No.3?

In each of these questions—the first relating to the statement made by appellants Iroh, Okafor, Akwuruoha, and Nnabugwu and the second relating to the statement made by appellant Okeke—the trial court identified four categories of damages to be considered:

> a.     Injury to reputation sustained in the past.

> b.     Injury to reputation that, in reasonable probability, Emmanuel Igwe will sustain in the future.

        c.        Mental anguish sustained in the past.

        d.        Mental anguish that, in reasonable probability, Emmanuel Igwe will sustain in the future.

In response to Question No. 5, the jury awarded Igwe actual damages corresponding to these four categories in the amounts of $50,000, $75,000, $10,000, and $5,000, respectively.[8]  In response to Question No. 9, the jury awarded actual damages in the amounts of $1,000, $2000, $100, and $1, respectively.  Appellants contend none of those awards are supported by evidence. We disagree.

As to his reputation, Igwe testified the publication of the Notice and the false statements about his handling of the Foundation's money had affected his business of tax return preparation. He believes the publications impeached his honesty and integrity.  Igwe's testimony was supported by Eleke, who testified that fewer people were coming to Igwe for tax return preparation.  Eleke also confirmed Igwe's belief that Igwe was kept out of the "Nigerian Council of Chiefs" because of circulation of the Notice.

And as to his suffering mental anguish, Igwe testified that publication of the Notice left him "devastated."  He swore he had been honest in all dealings on the project and had accounted for everything, but that he had become "a stooge, a nemesis," and that "there's nothing that has not been said about me."  He testified he does not go out to functions any longer "because once I pass, people would start mumbling . . . because of what has been told to them."  He testified he "lack[ed] words on how to express the torture [he] went through . . . dying inside."  And he testified he has lost sleep and his blood pressure medication has been increased as a result. Finally, testimony indicated the Notice remained posted on the Union's website at the time of trial.

---

[8] Those amounts were apportioned among appellants by the trial court in accordance with the percentages of responsibility assigned by the jury.

–17–

We reject appellants' argument that Igwe was unable to tie his injuries to the Notice and to statements by appellants at public meetings. *See Exxon Mobile Corp. v. Hines*, 252 S.W.3d 496, 506–07 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (requiring evidence damages were caused by publication). Igwe testified the publication and statements caused him the injuries. A reasonable jury could certainly infer that these public accusations of dishonesty lodged by members of the Obowu community would cause Igwe mental suffering and would harm him in his business as an accountant.

We conclude reasonable jurors could have concluded Igwe suffered substantial mental anguish and injury to his reputation because of the publication and statements by appellants. We further conclude the nature of the accusation against Igwe and the breadth of its publication could lead reasonable jurors to conclude he would continue to suffer harm in the future. The trial court did not err in refusing to overrule the jury's answers to Questions No. 5 and 9.

> **QUESTION NO. 7:** Do you find by clear and convincing evidence that the harm to Emmanuel Igwe resulted from malice regarding the statement published by Defendant(s) in Question No. 1?

Appellants contend there is no evidence that they acted with malice in publishing the Notice.[9] The trial court defined malice for the jury as "a specific intent by any of the Defendant(s) listed below to cause substantial injury or harm to Emmanuel Igwe."[10] Eleke characterized the treatment of Igwe as based on "personal animosity" and a "personal vendetta" orchestrated by certain groups within the Union. When asked to explain the basis of such animosity, Eleke testified that Igwe had been twice elected chairman of ODUUS. According to

---

[9] In response to this question, jurors found malice on the part of Iroh, Okafor, and Akwuruoha; they did not find malice on the part of Nnabugwu.

[10] We note that appellants rely on a definition and cases involving "actual malice," which is an element of defamation only when the person purportedly disparaged is a public figure. *See Bentley*, 94 S.W.3d at 590 ("the First Amendment precludes a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with actual malice"). Igwe is not a public figure, and the concept of actual malice plays no part in this appeal except in the context of exemplary damages.

–18–

Eleke, Akwuruoha wanted to be the legal advisor for this national organization, but Igwe did not appoint him to that position. Going further, Eleke testified that, without authorization from the Union, Akwuruoha and Iroh created the Notice,

> telling the whole world that Mr. Emmanuel Igwe embezzled $15,000, stole $15,000 from our union. Why? Because they wanted Obowu Union National to demote him, to fire him from the presidency of the union, the union.

> He sent out a letter to every person reminding them, telling them that Emmanuel Igwe stole our money, a misappropriation of funds because that would derail -- derail him from the office. We got the letter. Many of Obowu prominent people got the letter he sent and, in fact, he caused them -- he told them because of this, he should not remain the president, but we did not buy it.

Jurors could have found this testimony credible and found malice underlying the publication and the suspension itself. Likewise, jurors could have given weight to testimony that the project lacked only $1500 for completion, but the Union board both refused to pay the sum or to accept an offer to pay that sum from an individual member of the Union, supporting a finding of malice.

Finally, the jurors heard testimony that the publication involved procedures and procedural information that were suspect. Nwokori testified that communicating on behalf of the Union was his job as secretary of the Union, but Okeke publicly proposed that Akwuruoha draft the Notice, and Akwuruoha both drafted and determined who the appropriate recipients would be. Moreover, the jurors heard undisputed evidence that the Notice's statement of the manner of suspension—a unanimous vote of the Union's membership—was false. The Notice indicates the entire Union agreed to suspend Igwe because of his purported taking of the $15,000 without providing an accounting of his expenditures. In fact, the vote on suspension received only seventeen favorable votes, when the membership of the Union numbered approximately seventy men. Jurors could have inferred appellants purposely misstated the vote to make it appear the entire Union had turned against Igwe.

–19–

We conclude rational jurors could have concluded by clear and convincing evidence that the harm to Igwe resulted from malice regarding the publication and content of the Notice. The trial court did not err in refusing to disregard the jury's answer to Question No. 7.

> **QUESTION NO. 8:** What sum of money, if any, if paid now in cash, should be assessed against Defendants and awarded to Plaintiff as exemplary damages, if any, for the conduct found in response to Question No. 7?

In response to this question, the jury awarded Igwe $30,000 from Iroh, $20,000 from Okafor, and $50,000 from Akwuruoha. Appellants repeat under this heading that there is no evidence to support an award of exemplary damages against each of these appellants; we have decided to the contrary. They argue as well that the amount awarded for each defendant was excessive and unconscionable. "An award of exemplary damages rests in the jury's discretion and will not be set aside as excessive unless the amount is so large as to indicate that it is the result of passion and prejudice, or that the evidence has been disregarded." *Aetna Cas. & Sur. Co. v. Joseph*, 769 S.W.2d 603, 607 (Tex. App.—Dallas 1989, no writ.).

The trial court instructed jurors that these damages were "an amount that you may, in your discretion award as a penalty or by way of punishment." The court also directed jurors to consider the following factors in deciding whether to award exemplary damages and, if so, how much to award: the nature of the wrong, the character of the conduct involved, the degree of culpability of each defendant, the situation and sensibilities of the parties concerned, the extent to which such conduct offends a public sense of justice and propriety, and the net worth of each defendant. *See Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981). Other than the net worth of the defendants, the record indicates the jury heard evidence directly or indirectly speaking to each of these factors. A jury's award of exemplary damages must be "reasonably proportioned" to its award of actual damages, although the proper ratio depends on the facts of each case. *Id.* In this case, the actual damages awarded against defendants Iroh, Okafor, and

Akwuruoha are all greater than the exemplary damages awarded. We conclude the exemplary awards are reasonably proportioned to the actual-damage awards. The awards bear no indication that the jury was governed by passion and prejudice rather than the evidence. *See Joseph*, 769 S.W.2d at 607.

In addition to the *Alamo Bank* considerations, exemplary damages are limited by statute in Texas to the greater of (a) two times the amount of economic damages plus an amount equal to noneconomic damages found by the jury up to $750,000, or (b) $200,000. TEX. CIV. PRAC. & REM. CODE ANN. § 41.008(b) (West 2015). Injury to reputation and mental anguish are both defined as noneconomic damages. *Id.* § 41.001(12). No defendant was awarded economic damages. Accordingly, because the calculation envisioned by section 41.008(b) would yield only the amount of actual damages awarded against each defendant—the greatest of which was $63,000—the statute would cap these defendants' exemplary awards at $200,000. No exemplary damage award even approximates that amount, so the awards do not violate statutory constraints.

The trial court did not err in refusing to set aside the jury's answer to Question No. 8.

**QUESTION NO. 10:** Do you find by clear and convincing evidence that the harm to Emmanuel Igwe resulted from malice regarding the statement published by Defendant Okeke in Question No. 3?

We concluded above that reasonable jurors could have found Okeke defamed Igwe by stating at a meeting of Union members that Igwe stole the Union's money intended for the Nigerian schools project. The jurors could also have concluded that Okeke was aligned with the other appellants in their ill will towards Igwe and their efforts to remove him from national office. Minutes of the July 2010 Union meeting establish that Okeke publicly raised Igwe's status with the national association, stating that all Obowians supported ODUUS until the "problem" of "embezzlement of funds" arose. He stated further that the national leadership was

"not in order," because Igwe had been accused of a crime here in Dallas. Thus, according to Okeke's statement, Igwe should step down from that national leadership position. Moreover, minutes from the February 2011 meeting indicate Okeke stated the Union's legal advisor, not its secretary, should draft the letter of suspension. Jurors could have inferred that the reason to have Akwuruoha draft the Notice was so its content could be misstated—in order to harm Igwe— without objection.

A rational jury could have concluded by clear and convincing evidence that the harm to Igwe resulted from malice in Okeke's actions and statements. The trial court did not err in refusing to set aside the jury's answer to Question No. 10.

> **QUESTION NO. 11:** What sum of money, if any, if paid now in cash, should be assessed against Defendant Okeke and awarded to Plaintiff Igwe as exemplary damages, if any, for the conduct found in response to Question No. 10?

As we discussed above, an award of exemplary damages rests in the jury's discretion; we will set aside an award only if the amount appears to be the result of passion and prejudice or if the evidence has been disregarded. *Joseph*, 769 S.W.2d at 607. In this question, as in the earlier one, the trial court instructed the jury on the proper factors to consider in making the award. The jury awarded exemplary damages of $5000. A jury's award of exemplary damages must be "reasonably proportioned" to its award of actual damages, although the proper ratio depends on the facts of each case. *Alamo Nat'l Bank*, 616 S.W.2d at 910. Although the exemplary award here is larger than Igwe's actual-damages award of $3101, the difference is less than $2000. We conclude the awards are reasonably proportioned, and we see no indication the jury was governed by passion and prejudice rather than the evidence. *See Joseph*, 769 S.W.2d at 607. The trial court did not err in refusing to disregard the jury's answer to Issue No. 11.

We have concluded the trial court did not err in refusing to disregard any of the jury's findings challenged by appellants. We overrule appellants' second issue in its entirety.

Appellants raise a separate group of issues in their brief under the heading of their motion for new trial. There, appellants return to the charge's Question No. 1 and allege the question caused reversible error by creating an improper burden shift. Appellants complain the court asked the jury whether appellants published that Igwe took the money and failed to account for it, but never required the jury to decide whether that statement was defamatory. Appellants contend this "presumed defamation" shifted the burden of proof away from Igwe to them. We disagree. Igwe was required to prove, among the other elements of his defamation claim, that the statement at issue was defamatory. *See McLemore*, 978 S.W.2d at 571. It was his burden to carry, and that burden did not change.

But it was up to the trial court in the first instance to determine whether Igwe had carried his burden of establishing the statement was defamatory. *See Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000) ("whether a publication is capable of a defamatory meaning is initially a question for the court"). If the trial court concluded the statement that Igwe took the Foundation's money and failed to account for the funds was defamatory, that question did not need to be asked of the jury. *See Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987) ("Only when the court determines the language is ambiguous or of doubtful import should the jury then determine the statement's meaning and the effect the statement's publication has on an ordinary reader."). As we have discussed at length, the Notice stated Igwe had been suspended because he took $15,000 from the Foundation and failed to account for the funds. Although there may be appropriate reasons why the president of an entity would take funds from the entity's account, the allegation that he failed to give an accounting of what he did with those funds is an unambiguous statement of dishonesty. We conclude the trial court did not err in

deciding, as a matter of law, that the statement was defamatory. And the trial court did not err in refusing to grant a new trial on this ground.

Two other points raised in the new-trial portion of appellants' brief—variance and fair notice—have already been addressed in this opinion. The remaining points under this heading do no more than recite fragments of evidentiary standards without authority or analysis and refer only to "the reasons stated above" or "prior arguments" in saying a new trial should have been granted. We conclude appellants' points titled "[i]nsufficient evidence," "[a]gainst the great weight of the evidence," "[n]o evidence," and "[a]s a matter of law" have preserved nothing for our review that we have not addressed elsewhere in this opinion. *See* TEX. R. APP. P. 38.1(i); *Jantzen v. Am. Nat'l Bank of Tex., N.A.*, 300 S.W.3d 412, 417 (Tex. App.—Dallas 2009, no pet.).

### QUASI-ESTOPPEL AND RES JUDICATA EFFECT OF DEFAULT JUDGMENT

In their third issue, appellants contend that two defensive theories—res judicata and quasi-estoppel—stripped the trial court of jurisdiction after the partial default judgment was granted in favor of the Union and the Foundation. Appellants argue that once the trial court entered judgment on the intervenors' claim, the issue of appellants' liability was also decided. Again, we disagree.

Res judicata prevents the relitigation of a finally-adjudicated claim. *State & Cnty. Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 696 (Tex. 2001). It requires proof of (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of parties or those in privity with them, and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996). Appellants' argument fails to establish all three elements: (1) the intervenors' default judgment was not on the merits, (2) appellants are not the same parties as intervenors, and (3) Igwe's

–24–

defamation claim is not the same as intervenors' claim for misappropriation of funds. We conclude res judicata does not operate to bar litigation of Igwe's claims against appellants.

Appellants' reliance on the doctrine of quasi-estoppel is likewise misplaced. Quasi-estoppel operates to preclude a party from asserting a right or position, to another's disadvantage, when that right or position is inconsistent with a position the party has previously taken. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). "The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Id.* In this case, appellants have produced no evidence that Igwe ever took the position that he misappropriated $15,000 from the intervenors; that was the intervenors' allegation. And Igwe certainly has not received any benefit from that allegation or from the default judgment. *See TrueStar Petroleum Corp. v. Eagle Oil & Gas Co.*, 323 S.W.3d 316, 321 (Tex. App.—Dallas 2010, no pet.) ("TrueStar adduced no evidence that Eagle ever acquiesced to or took a position different from the one it now takes in this lawsuit"). Appellants' quasi-estoppel argument has no merit.

We overrule appellants' third issue.

### CROSS ISSUE: APPELLEE'S MOTION FOR NEW TRIAL

In a single cross issue, Igwe challenges the trial court's denial of his motion for new trial following entry of the default judgment against him. We review the denial of a motion for new trial for an abuse of discretion. *Dugan v. Compass Bank*, 129 S.W.3d 579, 582 (Tex. App.—Dallas 2003, no pet.).

Igwe contends initially that the trial court should have granted him a new trial because the intervenors failed to serve a copy of the motion for default judgment on him. However, after a defendant has been served with citation and the petition, the plaintiff has no legal duty to notify the defendant before taking a default judgment on the cause of action asserted in the served

–25–

petition. *Cont'l Carbon Co. v. Sea–Land Serv., Inc.*, 27 S.W.3d 184, 188–89 (Tex. App.—Dallas 2000, pet. denied) (stating defendant in no-answer default case "received all the notice to which it was entitled when it was originally served with process"). The record indicates Igwe was personally served with citation and the Amended Plea in Intervention. The intervenors were not required to notify him before taking a default judgment. *See id.*

Igwe next complains the trial court erred in awarding the intervenors attorney's fees because they have no pleading to support such an award. The intervenors respond that they "clearly requested attorney's fees in the prayer section of [the] amended intervention pleadings." The amended intervention was combined with the defendants' amended answer to Igwe's defamation suit, and the prayer in that pleading contains two paragraphs:

> WHEREFORE, Defendants pray that Plaintiff take nothing by his claims, that Defendants be dismissed with costs assessed against Plaintiff and *that Defendants be granted attorney's fees*, costs. and such other and further relief, at law or in equity, to which Defendants may be justly entitled.
>
> WHEREFORE, PREMISES CONSIDERED. Intervenors, OBOWU FOUNDATION DALLAS, INC. and OBOWU UNION DFW respectfully pray that the parties take notice of the filing of this Amended Plea in Intervention, and that upon a final hearing of the cause, judgment be entered for the Defendants and Intervenors and against Plaintiff for damages in an amount within the jurisdictional limits of the Court; together with prejudgment interest at the maximum rate allowed by law; post-judgment interest at the legal rate, costs of court; and such other and further relief to which the Defendants and Intervenors may be entitled at law or in equity.
>
> (Emphasis added.)

Contrary to the intervenors' assertion, it appears only the defendants sought an award of attorney's fees in this pleading.

This issue was raised in Igwe's motion for new trial, however we have no reporter's record of that hearing. Because we cannot know what arguments or rulings were made at that hearing on the issue of attorney's fees, we presume the correctness of the trial court's judgment on this point. *See Sedona Pac. Hous. P'ship v. Ventura*, 408 S.W.3d 507, 511 (Tex. App.—El

Paso 2013, no pet.) ("Under the presumption of regularity of judgments, we are required to presume recitations in the final judgment are correct absent any evidence to the contrary.").

Finally, Igwe contends he merits a new trial because he demonstrated his failure to answer the intervention was caused by a mistake or accident and not by conscious indifference. *See Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 393 (Tex. 1939). We disagree. The relevant facts here are not in dispute. Igwe was served with the intervention on December 12, 2011, and his father died the next day. He was absent from the country through the end of December and a good part of January. Igwe contends he gave the plea to his attorney when he returned to the country. At that point in time, both men must have been aware that the answer was late, but no answer was filed. The intervenors did not file their motion for default judgment until April 2012. The trial court could have concluded that, after Igwe returned to the country, the plea was treated with conscious indifference. We conclude the trial court did not abuse its discretion in denying the motion for new trial on this basis.

We overrule Igwe's cross issue.

## CONCLUSION

We have overruled all of appellants' issues and Igwe's single cross issue. We affirm the trial court's judgment.


130027F.P05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

–27–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

LAZARUS IROH, ANDREW OKAFOR, LUI AKWURUOHA, CALEB OKEKE, AND HENRY NNABUGWU, Appellants

No. 05-13-00027-CV     V.

EMMANUEL IGWE, Appellee

On Appeal from the County Court at Law No. 4, Dallas County, Texas
Trial Court Cause No. CC-11-07596-D.
Opinion delivered by Justice Bridges, Justices Fillmore and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee EMMANUEL IGWE recover his costs of this appeal from appellants LAZARUS IROH, ANDREW OKAFOR, LUI AKWURUOHA, CALEB OKEKE, AND HENRY NNABUGWU.

Judgment entered March 19, 2015.