**Reverse and Remand; Opinion Filed January 3, 2020**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-19-00150-CV

**LAURA CARACIO, Appellant**

**V.**

**JOHN DOE, INDIVIDUALLY AND AS NEXT FRIEND OF JOHN DOE, JR., A MINOR AND JANE DOE, INDIVIDUALLY AND AS NEXT FRIEND OF JOHN DOE, JR., A MINOR, Appellees**

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-16679**

## MEMORANDUM OPINION

Before Justices Myers, Osborne, and Nowell
Opinion by Justice Nowell

This is an interlocutory appeal from an order denying a motion to dismiss pursuant to the Texas Citizens Participation Act ("TCPA").[1] John Doe, individually and as next friend of John Doe, Jr., a minor, and Jane Doe, individually and as next friend of John Doe, Jr., a minor, sued Laura Caracio for defamation after she contacted Good Shepherd Episcopal School ("Good Shepherd" or "GSES")[2] and allegedly accused John Doe, Jr. of criminal and sexual misconduct. Caracio filed a motion to dismiss pursuant to the TCPA; the trial court denied the motion. We reverse the trial court's order. We remand this cause to the trial court for entry of a judgment of

---

[1] The TCPA was amended in the 2019 legislative session, but those amendments do not apply to this lawsuit, which was filed before the amendments' effective date. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 11, 12, 2019 Tex. Gen. Laws 684, 687 (amendments to TCPA apply "only to an action filed on or after" September 1, 2019).

[2] Good Shepherd is a defendant in this lawsuit, but not a party to this appeal.

dismissal as to the Does' claim against Caracio and for a determination of reasonable attorney's fees, sanctions, and expenses.

## BACKGROUND

In May 2017, the Does sought admission to Good Shepherd for Doe, Jr. who would be in sixth grade during the 2017-2018 school year. The application materials included Doe, Jr.'s educational records from two schools he previously attended, St. Thomas Aquinas Catholic School and St. John's Episcopal School. On June 21, 2017, Good Shepherd sent a written offer to the Does for Doe, Jr. to attend Good Shepherd for the 2017-2018 school year. The Does accepted the enrollment offer.

*1. Statements to Good Shepherd about Doe, Jr.*

On July 10, 2017, a Good Shepherd parent, Heather Holmes,[3] emailed the GSES's Head of School, Julie McLeod. The email states in part:

> I just got a disturbing email stating that a new student is coming to our sixth grade and his name is [redacted]. He has been expelled from St. John in fourth grade and then expelled in fifth grade from St. Thomas Aquinas. . . . Please explain to me why this child has been admitted to our school. I'm already hesitant to have [redacted] return and now you are accepting children that have a clear resume of bad behavior and expulsion from two other private schools in the area.

Also in the summer of 2017, Laura Caracio, whose daughters attended GSES, contacted the school. Caracio called David Dodd, GSES's Head of Middle School, and told him she heard about a new boy who would be attending Good Shepherd. She told Dodd she heard that, at a prior school, the boy was escorted off of the school premises after bringing a knife to a school carnival and he looked up the skirt of a female student or touched a female student inappropriately.

In her deposition, Caracio testified she was driving her daughter, a rising sixth grade student at GSES, and other girls to soccer practice. The girls were talking amongst themselves

---

[3] The Does also sued Heather Holmes. The trial court granted Holmes' motion to dismiss pursuant to the TCPA. Holmes is not a party to this appeal.

about a boy who they previously attended school with; the boy, who they did not identify by name, was going to attend Good Shepherd. Caracio testified the girls said the boy "had gotten into some trouble at school." Caracio stated: "I don't recall their exact words. I recall an incident of he had a knife at the school carnival and something about sexual harassment and looking at girls' skirts." Caracio did not discuss what she overheard with the girls or their parents. She had not heard the girls talk about this boy on previous occasions and did not hear them discuss the boy again.

Caracio testified she called Dodd and "told Good Shepherd that I overheard a conversation in my daughter's soccer carpool about a boy who was coming to Good Shepherd who they had said brought a knife to the school carnival and looked up some girls' skirts with sexual harassment. I do not remember the exact words. I remember the two incidents." She also testified: "I told David Dodd of a conversation I overheard that included the boy brought a knife to a school carnival." Caracio did not recall stating the boy was expelled from a previous school.

The following exchanges occurred during Caracio's deposition:

Q. Do you consider reporting information about a boy who has applied to Good Shepherd, where you volunteer for Admissions,[4] who brought a knife to a school carnival and who has engaged in sexual harassment, looked up girls' skirts—Do you think that that's significant information?
[Attorney]: Object to form, but you can answer the question.
A. I think it is something that they need to know and do - - do their due diligence on researching. . . . Well, if there was a boy coming to our school, I think they needed to check the situation out; correct.
. . .
Q. Is it your testimony that what you told Good Shepherd about this boy only came from one communication?
A. Yes.
Q. What did David Dodd say in response?
A. I don't recall his exact words. He would look into it.
Q. Did he look in to it?
A. I never heard - - never communicated with him about it again.
Q. What did you find out what happened from Good Shepherd?
A. I did not hear anything from Good Shepherd until I heard about this suit.

_____

[4] Caracio volunteers in the school's admissions office where she gives tours of the school to prospective parents; she did not recall meeting John and Jane Doe on such a tour.

Caracio executed an affidavit on January 4, 2019 stating:

> 3. After hearing those statements, I was concerned for the safety and welfare of my daughters who attended Good Shepherd, as well as the safety and welfare of other students. I was also concerned for the culture and values of the school. The information that I communicated to David Dodd about the boy was only what I had overheard and I had no reason to believe that the statements I overheard were false. I believed that I needed to inform the school about what I had overheard and that the school was in the best position to handle and investigate the issue.

> 4. At the time of my communication to David Dodd, I did not know the identity of the boy and held no ill-will towards him. I also did not personally know or know the identity of John Doe, Jr.'s family or hold any ill-will towards them. My first introduction to Jane Doe was at my deposition. To this date, I have never met John Doe or any other member of the Doe family.

2. *Incidents Involving Doe, Jr. at Previous Schools*

Jane Doe testified at her deposition that Doe, Jr. attended St. John's for first, second, and third grades. When Doe, Jr. was in third grade, the Does had a dispute with the school administration about the school's curriculum. While the Does and St. John's were mired in the dispute, a board member told the Does not to return to the school for the following school year. Doe, Jr. attended St. Thomas for fourth and fifth grades.

Jane Doe testified: "There was an incident at St. Thomas where it was alleged my son had a knife." She recalled it occurred in September of his fourth-grade year on "bingo night," the night before the school carnival. Jane Doe heard about the allegation from her daughter who received phone calls or social media messages from her classmates in eighth grade. Her peers asked "if it were true that [Doe, Jr.] had knifed someone at carnival." When Jane Doe asked her son about the allegations, he initially told her he did not know what she was talking about. Doe, Jr. later told his mother that a girl in his class brought a pocketknife or pocket tool to bingo night; the girl removed the knife or tool from a bag to show Doe, Jr. The implement was a Leatherman, which Jane Doe presumed included a knife blade. Doe, Jr. told his mother that he held the Leatherman, looked at it, and commented it was "cool." He said he did not remove the tool from its sheath. The girl's

mother later called Jane Doe and apologized that her daughter brought the Leatherman to school and rumors were spread about Doe, Jr. based on her daughter's actions. In his deposition, John Doe testified: "My son told me that there was a knife that was brought by a classmate named [omitted] and that he pulled it out and looked at it, and that was that." John Doe also stated: "he had a knife in his hand at some point that evening."

Patrick Magee testified as a representative of St. Thomas Aquinas Catholic School. About the "knife incident," he believed the knife was a "little Cub Scout knife from a campout" and similar to a pocketknife. Magee testified Doe, Jr. said he took the knife from the backpack of another student, but no discipline was imposed on Doe, Jr. or the other student as a result of the knife incident. To the best of his knowledge, no one from St. Thomas advised Good Shepherd about the knife incident.

Jane Doe testified that on the same bingo night, several children were playing on the football field without their shoes on. Doe, Jr. or someone else threw another child's shoes toward the football goal post. A child then jumped on Doe, Jr.'s back. Jane described Doe, Jr. as tall and "stout"; "[h]e was very big. He was heavy." Jane Doe explained Doe, Jr. shook his body to "get that kid off of his back and either hit him, elbowed him, somehow got him in the nose when he was getting the kid off of his back, and [the other child's] nose was bleeding." Testifying about the same incident, John Doe explained Doe, Jr. twisted and threw the other boy off of his back. John Doe testified: "A kid was on his back; for whatever reason, he's tired of him being on his back . . . the mom calls my wife and says "Everything's okay. He gets nosebleeds all the time.'"

Neither Jane nor John Doe saw the events on the football field. However, two police officers and a teacher brought Doe, Jr. to Jane Doe and told her a child was hit in the nose and the child's nose was bleeding. St. Thomas did not discipline Doe, Jr. as a result of the incident.

Jane Doe testified the first time she heard allegations that Doe, Jr. inappropriately touched another student was during this litigation. She was not aware of any incidents involving any sort of sexual harassment or her son looking up girls' dresses at any school.

On May 1, 2017, St. Thomas notified the Does that the school chose not to renew the contract for Doe, Jr. to attend sixth grade. Neither John nor Jane Doe knew why the contract was not renewed. They promptly applied to Good Shepherd and Doe, Jr. was accepted.

*3. Good Shepherd Rescinds Doe, Jr.'s Acceptance*

The Does allege Good Shepherd did not inform them about the communications from Caracio and Holmes. Instead Good Shepherd reopened Doe, Jr.'s application and sought additional information from St. Thomas and St. John's.

On Friday, August 11, 2017, Julie McLeod contacted Jane Doe and requested a meeting the following Monday. McLeod testified there "were a couple of items that had come to our attention that were potential disciplinary concerns. One was an incident in which there may have been a knife at a carnival, and one was alleged inappropriate touching someone of the opposite sex, gender." The Does met with McLeod on Monday, August 14, 2017. McLeod asked why their contract was not renewed at St. Thomas and why the non-renewal was not mentioned in their application for Good Shepherd. John Doe described an incident when a child jumped on Doe, Jr.'s back, but did not mention the Leatherman at bingo night. They also discussed that Doe, Jr. is disruptive in classrooms. At the end of the meeting, the parties agreed that Doe, Jr. would meet with McLeod the following day. Doe, Jr. met with McLeod and Dodd for fewer than ten minutes; John and Jane Doe did not participate in the meeting. Doe, Jr. reported to his mother that he told McLeod and Dodd that he did not bring a knife to school or the carnival.

McLeod executed two affidavits as part of this litigation. She averred the Does applied to Good Shepherd but, in their application, failed to provide complete responses. "Junior's

application made no reference to incident(s) in which he was involved at a campus he previously attended. Unaware of these incident(s), an offer was extended for Junior to attend GSES." Subsequently, concerns were raised that Junior had "prior behavioral issues and may pose a threat to others attending GSES. McLeod stated the source of the information was two parents from the school: Heather Holmes and Laurie Caracio. Concerned both by the lack of disclosure in the application and the reports of involvement in wrongdoing by Junior coming from third parties," McLeod began performing due diligence work. She stated that GSES promptly notified the Does about its "concerns with the adverse impact allegations relating to Junior might have to [sic] Junior and the student body." The Does "did not deny that incident(s) involving Junior had transpired and had not been reported to GSES in the application." GSES representatives met with Doe, Jr. alone and "Junior acknowledged the events which caused concern and confirmed that those events did make interaction with other students difficult. Junior also left GSES representatives with the impression that Junior did not perceive himself as sharing in responsibility for the events in dispute." GSES was concerned that Doe, Jr. "might not integrate into the GSES community as well as there being safety concerns." On August 15, 2017, McLeod informed Jane Doe that GSES was rescinding Doe, Jr.'s enrollment.

4. *Lawsuit and TCPA Motion to Dismiss*

The Does sued Caracio and others. As to Caracio, the Does alleged she published statements of fact to Good Shepherd about Doe, Jr. and/or the Does. Specifically, she accused Doe, Jr. of bringing a knife to a school carnival, looking up the skirt of a female student or touching a female student inappropriately, and being removed or expelled from St. Thomas and St. John's. The Does alleged the statements were defamatory and defamatory per se because they imputed Doe, Jr. with criminal conduct and sexual misconduct.

–7–

Caracio moved to dismiss the defamation claim against her pursuant to the TCPA. She argued the Does' claim was based on, related to, or in response to her exercise of the right to free speech and right of association. Caracio asserted she was sued for accurately and truthfully reporting a matter of public concern and safety—a prospective student's disciplinary history involving a weapon at a school event and inappropriate behavior with the opposite sex at school. The Does argued Caracio's statements about Doe, Jr. were false and that, with regard to the truth of these statements, Caracio acted with actual malice or, alternatively, negligence because Caracio never contacted the Does to determine if the statements were true and never attempted to verify statements she overheard with any adult. The trial court denied Caracio's motion to dismiss, and this appeal followed.

In four issues on appeal, Caracio asserts the TCPA applies to the claim against her and the trial court erred by not granting her motion to dismiss because she proved the qualified privilege affirmative defense by a preponderance of the evidence, she proved her statements were substantially true by a preponderance of the evidence, and the Does failed to establish a prima facie case of defamation by clear and specific evidence. The Does do not dispute the TCPA applies.

LAW & ANALYSIS

The TCPA "protects citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). That protection comes in the form of a motion to dismiss for "any suit that appears to stifle the defendant's" exercise of those rights. *Id.* Reviewing a TCPA motion to dismiss requires a three-step analysis. *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018). Initially the moving party must show by a preponderance of the evidence that the legal action against it is based on, relates to, or is in response to the movant's exercise of the right of free

speech, petition, or association. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b). If the movant meets its burden, the nonmoving party must establish by clear and specific evidence a prima facie case for each essential element of its claim. *See id*. § 27.005(c). If the nonmoving party satisfies that requirement, the burden shifts back to the movant to prove each essential element of any valid defenses by a preponderance of the evidence. *Id*. § 27.005(d). If the movant meets its burden in this third step, the trial court must dismiss the action. *See id.*

We review de novo the trial court's determinations that the parties met or failed to meet their burdens of proof under section 27.005. *Campbell v. Clark*, 471 S.W.3d 615, 623 (Tex. App.—Dallas 2015, no pet.).

Caracio phrases her first issue to question whether the "trial court correctly determine[d] that Chapter 27 applies to the defamation claims asserted against Appellant?" In the trial court, the Does stated they did not challenge that the legal action is based on speech within the purview of the TCPA. Because the Does did not contest the statute's application, we need not decide this issue. *See generally Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019) (assuming TCPA applied where neither party disputed its application); *see also* TEX. R. APP. P. 47.1. We will assume Caracio met her initial burden. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b).

The second step of the analysis considers whether the nonmovants, the Does, established all essential elements of their claim by clear and specific evidence. *Id*. § 27.005(c). In her fourth issue, Caracio argues the Does failed to established a prima facie case of defamation by clear and specific evidence and, therefore, the trial court erred by failing to grant her motion to dismiss. A cause of action for defamation requires (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages. *Mohamed v. Ctr. for Sec. Policy*, 554 S.W.3d 767, 774 (Tex. App.—Dallas 2018,

pet. denied) (citing *In re Lipsky*, 460 S.W.3d at 593). Defamation per se refers to statements that are so obviously harmful that general damages may be presumed. *Id.* at 777 (citing *In re Lipsky*, 460 S.W.3d at 596). The law presumes certain categories of statements are defamatory per se, including statements that (1) unambiguously charge a crime, dishonesty, fraud, rascality, or general depravity or (2) are falsehoods that injure one in his office, business, profession, or occupation. *Id.*

We need not consider Caracio's fourth issue to resolve the appeal. *See* TEX. R. APP. P. 47.1. If we assume without deciding that the Does satisfied their burden of establishing by clear and specific evidence a prima facie case for each essential element of their claim against Caracio, we then proceed to the third step of the analysis, which is dispositive in this case.

In the third step, we consider whether Caracio established by a preponderance of the evidence each essential element of a valid defense to the Does' defamation claim against her. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d). In her second issue, Caracio asserts the trial court erred by failing to grant her motion to dismiss because she proved the qualified privilege affirmative defense by a preponderance of the evidence.

A qualified privilege against defamation applies to good-faith communications "upon any subject in which the author or the public has an interest or with respect to which the author has a duty to perform to another owing a corresponding duty." *Minett v. Snowden*, No. 05-18-00003-CV, 2018 WL 2929339, at *11 (Tex. App.—Dallas June 12, 2018, pet. denied) (mem. op.) (quoting *Iroh v. Igwe*, 461 S.W.3d 253, 263 (Tex. App.—Dallas 2015, pet. denied)); *see Burbage v. Burbage*, 447 S.W.3d 249, 254 (Tex. 2014) (qualified privilege attaches to a communication that is "made in good faith and the author, the recipient or a third person, or one of their family members, has an interest that is sufficiently affected by the communication"). To meet her TCPA burden to prove qualified privilege, Caracio was required to establish by a preponderance of the

evidence that she did not make the statements in question with actual malice, defined as knowledge of falsity or reckless disregard for the truth. *See Minett*, 2018 WL 2929339, at \*11 (citing *Spencer v. Overpeck*, No. 04–16–00565–CV, 2017 WL 993093, at \*7 (Tex. App.—San Antonio Mar. 15, 2017, pet. denied) (mem. op.)); *see also In re Lipsky*, 460 S.W.3d at 593 ("'Actual malice' in this context means that the statement was made with knowledge of its falsity or with reckless disregard for its truth."); TEX. CIV. PRAC. & REM. CODE § 27.005(d)).

Actual malice "means knowledge of, or reckless disregard for, the falsity of a statement." *Bentley v. Bunton*, 94 S.W.3d 561, 591 (Tex. 2002). Reckless disregard is a subjective standard that focuses on the conduct and state of mind of the defendant. *Id.* Describing reckless disregard, the Texas Supreme Court stated:

> It requires more than a departure from reasonably prudent conduct. Mere negligence is not enough. There must be evidence that the defendant in fact entertained serious doubts as to the truth of his publication, evidence that the defendant actually had a 'high degree of awareness of . . . [the] probable falsity of his statements. Thus, for example, the failure to investigate the facts before speaking as a reasonably prudent person would do is not, standing alone, evidence of a reckless disregard for the truth, but evidence that a failure to investigate was contrary to a speaker's usual practice and motivated by a desire to avoid the truth may demonstrate the reckless disregard required for actual malice.

*Id.* (internal quotations and citations omitted).

It is uncontested that at the time Caracio spoke to David Dodd about the conversation she overheard while driving carpool, her two daughters attended Good Shepherd and one of the girls would be in the sixth grade class along with the new boy who was later identified as Doe, Jr. The information Caracio heard was the new boy brought a knife to a school carnival and engaged in inappropriate behavior with girls at his prior school or schools. Caracio conveyed that information to Dodd, who was head of the middle school that her daughter attended and Doe planned to attend, because it was something she thought the school should know, she "was concerned for the safety and welfare of my daughters who attended Good Shepherd," and she believed she needed to inform

–11–

the school about what she heard so the school could "handle and investigate the issue." Caracio testified she did not know Doe, Jr. or the Doe family and had no reason to believe the statements were false or to significantly doubt the truth of the statements. Even if we were to assume Caracio made an error in judgment or was negligent by reporting the conversation to Dodd, such an error or negligent act is not enough to establish reckless disregard and malice. *See Bentley*, 94 S.W.3d at 591.

Based on the evidence in the record, we conclude Caracio met her burden to establish by a preponderance of the evidence that she made the communication in good faith and without malice, and she, one of her family members, and the recipient had an interest sufficiently affected by the communication. Because Caracio established by a preponderance of the evidence each essential element of her defense of qualified privilege, the trial court erred by not dismissing the legal action against her. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(d) ("the court shall dismiss a legal action against the moving party if the moving party establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law"). We sustain Caracio's second issue.

In her third issue, Caracio argues the trial court also erred by failing to grant her motion to dismiss because she proved by a preponderance of the evidence the statements she made were substantially true. Based on our resolution of Caracio's second issue, we need not consider this argument. *See* TEX. R. APP. P. 47.1.

### DAMAGES & COSTS

The TCPA requires the trial court to award court costs, attorney's fees, expenses, and sanctions to a party who prevails on its motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE § 27.009(a). Because the trial court has not had the opportunity to consider Caracio's attorney's fees, sanctions, and expenses, we remand so that it may do so.

–12–

We reverse the trial court's order. We remand this cause to the trial court for entry of a judgment of dismissal as to the Does' claim against Caracio and a determination of reasonable attorney's fees, sanctions, and expenses.

/Erin A. Nowell/
ERIN A. NOWELL
JUSTICE

190150F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

LAURA CARACIO, Appellant

No. 05-19-00150-CV V.

JOHN DOE, INDIVIDUALLY AND A
NEXT FRIEND OF JOHN DOE, JR., A
MINOR AND JANE DOE,
INDIVIDUALLY AND A NEXT FRIEND
OF JOHN DOE, JR., A MINOR, Appellees

On Appeal from the 68th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-17-16679.
Opinion delivered by Justice Nowell.
Justices Myers and Osborne participating.

In accordance with this Court's opinion of this date, the trial court's order denying appellant's motion to dismiss is **REVERSED.** This cause is **REMANDED** to the trial court for entry of a judgment of dismissal as to appellees' claims against appellant and a determination of reasonable attorney's fees, sanctions, and expenses.

It is **ORDERED** that appellant Laura Caracio recover her costs of this appeal from appellees John Doe, Individually and a Next Friend of John Doe, Jr., A Minor, and Jane Doe, Individually and a Next Friend of John Doe, Jr., A Minor.

Judgment entered this 3rd day of January, 2020.