<hr />

CASE 84—PETITION EQUITY—FEBRUARY 13.

# Long & Co. v. Louisville and Nashville Railroad Company, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. CONVEYANCE BY CITY TO RAILROAD COMPANY CONSTRUED.—The city of Louisville entered into an agreement with a railroad company whereby it was to furnish the company a road-bed in another part of the city in consideration of the company's agreement to change the location of its road from a certain street in the city, and thereupon the city obtained, by condemnation, "for railroad and sewer purposes," the title to a strip of ground 110 feet wide, upon

Long & Co. v. Louisville and Nashville Railroad Company, &c.

60 feet of which the company constructed its road-bed. Thereafter the city executed to the company a deed, conveying "its title to the road-bed and right of way." *Held*—That the deed passed the title to only the 60 feet used by the railroad, the title to the remainder of the 110 feet being still in the city.

2. EQUITABLE EJECTMENT—PARTIES TO ACTIONS.—The plaintiff in ejectment, although in equity, can not bring into his action a party who has title to land in defendant's possession not in controversy in the original action, and thus enable him, by cross-petition, to recover this land also of defendant. And the fact that there is a question of doubtful boundary does not give the chancellor jurisdiction to determine the question by bringing all parties before the court who may have an interest in establishing the line. Such a jurisdiction might be exercised to prevent a multiplicity of suits; but where the remedy at law is adequate, there is no reason for permitting several recoveries in ejectment by plaintiffs and cross-plaintiffs against a common defendant.

3. FAILURE TO MOVE TO TRANSFER.—This action in ejectment having been brought in equity, and the defendant failing to move to transfer to the common law court, he can not complain that he was deprived of a trial by jury.

4. EJECTMENT.—The plaintiff in ejectment must recover upon the strength of his own title, and not upon the want of title in defendant; and, having no title himself, he can not bring into his action the party who has title, and shelter under that title.

O'NEAL, JACKSON & PHELPS FOR APPELLANTS.

1. The Louisville and Nashville Railroad does not own any thing except the road-bed of 40 feet upon which the double-track railroad is built. The city did not convey all of the 110 feet, but merely the right of way for a double-track railroad, which it had agreed to convey. (Burnett's City Code, p. 566, secs. 51, 52, 53, 54.)

2. Equity will not restrain interference with complainants' possession of his premises when the indirect effect of the injunction would be to reinstate complainant in possession, the remedy at law being ample for that purpose. (1 High on Injunctions, secs. 715, 713, 712, 708, 706; Akrill v. Seldon, &c., 1 Barb., 316; Gaunt v. Fynney, 8 Law Rep., and Ch'y App., p. 14; Wangelein v. Goe, 50 Ill., p. 459; Herr v. Bierbaur, 8 Md. Ch'y, p. 456.)

3. An injunction is not allowed to prevent the obstruction of or interference with an easement. (Courier Co. v. Corbit, 2 Dr. S. M., 360; Stanley v. Shrewsbery, L. R., 19 Equity, 16; s. c., 13 Eng. R., 546; Bliss v. Kennedy, 43 Ill., 74; Patterson v. Gilford, L. R., 18 Eq., 259; s. c., 9 Eng. R., 786; Hough v. Doylestown, 4 Brewst. (Penn.), p. 333; Winona v. Huff, 11 Minn., 119; Banks, &c., v. Booth, 2 B. & P., p. 219.)
Vol. 89—35

Long & Co. v. Louisville and Nashville Railroad Company, &c.

4. The cross-petition of Hampton, &c., can not be maintained on the idea 'that it is establishing a boundary between proprietors between whom a confusion of boundaries may exist, because a court will not interfere to establish a boundary between *independent* proprietors between whom a confusion of boundaries may exist. (Miller v. Warnington, 1 Jacob & Walker, 490; Stuart's Heirs v. Coulter, 4 Randolph, 74; Topp v. Williams, 7 Humphreys, 569.)

Nor can it be sustained on the idea of quieting the title of the cross-plaintiffs, as they are confessedly out of possession, and their prayer is to be put into possession by the chancellor. (Williams v. Halbert, 7 B. M., 186.)

No cross-bill can be maintained which does not seek equitable relief. (Story's Equitable Pleading, par. 398; Calverly v. Williams, 1 Vesey, p. 213.)

5. A cross-petition is not allowed to a defendant, except upon a cause of action which affects or is affected by the original cause of action. (Civil Code, sec. 96; Daniels v. Morrison's Ex'r, 6 Dana, 187; Cooper's Daniel's Ch'y Practice, p. 1548, chap. 34, and notes of Chancellor Cooper.)

There is nothing in the cross-demand of Haskells and Hampton affecting or germane to the original cause of action presented by the appellee, either in its original or amended petition. (Civil Code, sec. 96, subsec. 3; Crabtree v. Banks' Adm'r, 1 Met., 482; Wells v. Boyd, 1 Duv., 366; Royse v. Reynolds, 10 Bush, 286.)

6. The cross-plaintiffs are not proper parties to the controversy between appellant and appellee, as no one may be made a defendant unless he claim an interest in the controversy adverse to the plaintiff, or is a necessary party to the complete determination of the question involved in the action. (Civil Code, sec. 23.)

WM. LINDSAY FOR LOUISVILLE AND NASHVILLE RAILROAD COMPANY.

1. The failure of appellant to require plaintiff to elect which cause of action it would prosecute was an election to permit the two causes of action to be tried and decided by the chancellor; and if, as appellants claim, the action to clear the right of way of the fence was an action at law in the nature of an action of ejectment, then this election to have it tried by the chancellor was, in effect, the substitution of the chancellor for a jury, and his finding of the facts on that branch of the case is as conclusive as the verdict of a properly instructed jury would have been.

2. The mayor's deed conveys the entire right of way, 110 feet wide, without limitation or reservation of any kind. If the right to authorize other railway companies to put tracks on this right of way was reserved, that reservation has not been acted upon, and

Long & Co. v. Louisville and Nashville Railroad Company, &c.

until a grant is made to another railway company, the right of the Louisville and Nashville Company to the exclusive use and enjoyment of all the strip of land making up the right of way can not be called in question by Dennis Long & Co., or any mere intruder.

3. Hampton and his grand-children are proper, if not necessary, parties to this litigation. Like the railroad company, they were suffering from the wrong of Dennis Long & Co. in making the single inclosure complained of, and were equally interested with the railroad company in having the true location of the ancient bed of Beargrass judicially ascertained and decreed. Besides, the policy of the law favored the settlement of this disputed question in a single suit, to which all persons interested should be made parties. (Pomeroy's Equity, vol. 1, sec. 257 and notes; Civil Code, secs. 22, 23, 28, 29.)

But the judgment in favor of the Hamptons is so far separate and distinct from that in favor of the railroad company, that the former may be reversed without disturbing the latter.

THOMAS AND JOHN SPEED FOR WADE HAMPTON, &c.

1. The chancellor has found the facts to be in exact accordance with the allegations of the petition and cross-petition, and his finding of facts has the same weight as the verdict of a properly instructed jury, which this court will not set aside, unless flagrantly against the evidence.

2. The Hamptons were not only necessary but proper parties, and had the right to maintain their cross-action. There was a confusion of boundaries affecting Long & Co., the railroad company and the Hamptons, and the judgment of the chancellor settles the confused boundaries, and cuts off a multiplicity of suits in regard to one subject-matter. (Civil Code, secs. 23, 28; 1 Pomeroy's Equity, sec. 257, and notes; Story's Equity, sec. 621; Cadegan v. Brown, 120 Mass., 493-5.)

A. BARNETT FOR APPELLEES IN PETITION FOR REHEARING.

Brief not in record.

1. If the railroad company is entitled, as the court seems to think, to a right of way of sixty feet, it is fair and just to lay it off equally on both sides of the " center or stake line," allowing 30 feet on each side of that line. Long has taken 6 feet 2 inches of the right of way next to Preston street, and has taken 3½ feet of it at Jackson street. To that extent, at least, relief should be granted.

2. But there is nothing to show that the city intended to convey only 60 feet of the right of way.

a. In the case against Hall, the city took 110 feet. The verdict of the jury valued that much.

    *b.* The city built an immense embankment on it.

    *c.* The city sold and conveyed, by the map in the Hall case, "all its rights, &c., right of way, and road-bed."

    *d.* If less than 110 feet was to be included in her deed, the city would have said so.

3. The fact that the 110 feet was condemned for both railroad and *sewer* purposes, is not material. The city *started* the Hall case to get 110 feet for "railroad purposes." Afterward, by amended petition, it claimed that the same 110 feet was needed also for sewer purposes. The space claimed was not increased in width on account of sewerage. No ordinance had passed to condemn land for sewer purposes; but this feature was put into the case in order to have the right as against the railroad company to put in sewers where needed.

BARNETT, MILLER & BARNETT of counsel on same side.

JUDGE PRYOR delivered the opinion of the court.

The Louisville, Cincinnati and Lexington Railroad Company originally occupied a right of way for a double-track road on Jefferson street, in the city of Louisville, and the city or the railroad company being desirous of changing the location of the railway from Jefferson street to a point north of Main street, an agreement was entered into, by which the city was to furnish a road-bed for the company at the place and on the ground north of Main street, where the track of the Louisville and Nashville Railroad Company now runs, it being the successor, by purchase, of all the rights and franchises of the Louisville, Cincinnati and Lexington Railroad Company. In order to effect the change in the location of the road, it appears that the city of Louisville, by condemnation and purchase, obtained the fee-simple title to one hundred and ten feet of ground near the old bed of Beargrass creek, running to Brook street, and below that street, where the depot, switches and turn-outs of the road are located.

One of the principal questions in this case, and upon which the right of recovery by the railroad company depends, is, did the city convey or donate to the company the entire one hundred and ten feet of land as a way, or did it give to the railroad company a road-bed of sufficient width on which to construct a double track—that is, a way similar to the one it had given the company on Jefferson street, from which the road-bed had been removed?

A road-bed was constructed, upon which a double track was laid, and the right to the use of this road-bed, sixty feet in width, by the company, is unquestioned. The questions arise between Dennis Long, the appellant, and the railroad company, the latter filing its petition in equity, in which it is alleged that the defendant, Long, was about to erect a fence on the side of and within the one hundred and ten feet of ground, so as to affect the enjoyment of the easement and the proper operation of the road by the company.

It appears affirmatively that this assertion of right by the appellant does not affect or interfere with the road-bed in any way, or with the rights of the appellee, unless the company is entitled to the use of the entire ground. In the case of the city of Louisville against Hall and others, the object of the condemnation was to obtain this strip of land for railroad and *sewer* purposes, the record in that case plainly indicating that the appellee was not to occupy over sixty feet of the ground ; and while this can not affect the rights of the company if a conveyance has been made to the entire strip, it is persuasive as to

what was contemplated by the parties. When the fill was constructed and the road-bed completed, the city conveyed to the railway company "its title to the road-bed, bridges and right of way from near the round-house of the Louisville, Cincinnati and Lexing- ton Railway Company, east of Southall street, along Pocahontas street and the old bed of Beargrass creek, to Brook street; also all the land belonging to the city between Brook street and Second street, and the south line of the wharf and the north line of Water street, to be used for depot purposes," &c. When the route reaches Brook street, between that and Second, *all* the land of the city is conveyed for depot purposes, but east of that the right of way is given over the one hundred and ten feet, so as to op- erate a double-track railroad. The double track as laid is now being operated, and, from the facts of the record, it is manifest that the city intended to part with sixty feet of the strip for railroad purposes until it reached Brook and Second, where all the land was given. There is no reason for this court to im- ply a purpose, on the part of the city, to give to the company more of this ground, or to so construe the conveyance, and particularly when the city, in part- ing with all of its title to the land between Brook and Second streets, has said so in express terms, and as to this strip of land the title to the road-bed, with the right of way, is passed, and nothing more. It was condemned for city purposes, and those purposes were to furnish the railway company with its road- bed and sewers for drainage, and there appears no fact upon which to conclude that the intention of the

city was to give all of its purchase, by condemnation, to the railroad company. It occupies, or has been given, more ground than it occupied on Jefferson street, for the reason, as the record shows, in the case of the City v. Hall, that such was the purpose of the city when these condemnation proceedings were had. The city of Louisville is not a party to this proceeding, and the title to the land upon which appellee runs its road, outside of the road-bed (sixty feet), being in the city, as between it and the railroad company, the title is in the city, and not in the appellee, and, therefore, this action can not be maintained.

During the progress of the trial the heirs of Hampton were made parties-defendant, and by an answer and cross-petition they assert a claim against the appellant, Long, and seek to recover land not involved in the controversy. The right to maintain the cross-action is based on the idea that this litigation involves the settlement of, or location of, the boundary line that, when established, determines the rights of these parties. As to where the thread of Beargrass creek ran many years anterior to this litigation was an issue presented by the pleadings and the proof, and as to its exact location the witnesses differ widely, and a decision either way upon the issue of fact by the court below would have to be approved by this court. This action is, in fact, an equitable ejectment. There was no motion to transfer the case to the common law court, and, with title in the plaintiff, the defendant could not complain that he was deprived of a trial by jury. The record

presents this state of case : The plaintiff, the appel-
lee, is claiming in ejectment the land, or a part of
it, in the possession of the defendant.    The plaint-
iff brings other parties as defendants into the case,
who file a cross-petition against their co-defendant
Long, claiming other land than that involved in the
original action.    Hampton's heirs concede that the
plaintiff owns the land it claims to recover of the
defendant, and that its (the railroad's) north line is
the centre line of Beargrass ; but the cross-plaintiffs
say they own a strip of land lying between plaintiffs'
north line and defendant's south line, and that de-
fendant, Long, is about to inclose that also.    There
was an objection to the filing of this cross-petition,
and a motion to strike out so much of the pleading
as made it a cross-petition, and the objection was
overruled, and two recoveries permitted—one by the
original plaintiff and the other by the cross-plaintiff.
If Hampton's heirs owned no part of the land in dis-
pute between the parties to the original action, they
were not necessary parties, and, if owning the land
sought to be recovered by the plaintiffs, there is still
less reason for making them parties, because they
could not be used by the plaintiff for the purpose
of divesting the defendant of his possession, or de-
feat his title in any such manner.    The plaintiff
must recover on the strength of his own title, and
while an outstanding title might be relied on by the
defendant to defeat the plaintiff, the plaintiff can not
bring into his action a party who has a better title
than either, or a defendant who has title to some
other land not in controversy in the original action,.

but in the defendant's possession, so as to permit him, by cross-petition, to recover this land also of the defendant. Here is a question of doubtful boundary, with conflicting testimony as to the real line. This fact does not give the chancellor jurisdiction to determine the question by bringing all parties before the court who may have an interest in establishing the line. The owners of the land claimed to a different boundary, and if this gives the jurisdiction to a chancellor to settle the boundary, there never was any use for the action of ejectment. A case might arise where a multiplicity of suits would be prevented by the exercise of such a jurisdiction; but when the remedy at law is adequate, as it is in this case, there can be no reason for permitting several recoveries in ejectment by plaintiffs and cross-plaintiffs against a common defendant. The case of Fraley v. Peters, 12 Bush, 469, relied on by counsel, sustains this view of the question. If the plaintiff could not settle a question of boundary as to one because others were interested, then the chancellor might assume jurisdiction for the reason that the right of the plaintiff could not be established in any other way, and thus prevent a multiplicity of suits. The facts here present no such case, and, with the remedy ample and complete at law, the cross-plaintiffs have no right to recover that which was not the subject of the action, although the testimony as to possession, title and boundary is identical in both the original and cross-actions.

The original and cross-actions against Long should be dismissed—the cross-action without prejudice—and the cause remanded for that purpose.

To a petition for rehearing, filed by counsel for appellee, the court delivered the following response:

The railroad company has only a right of way over the ground to which the fee is vested in the city of Louisville. The territory in question was not only condemned for the purpose of giving to the road a bed for its track, but for sewer purposes, and the record shows that sewers have already been constructed. The fill was made for the use of the railway, and that it might have a double track upon it The conveyance from the city to the railroad passes only the right of way, and nothing else was intended. In the light of the proceeding in the case against Ball and others for condemnation, it would be inconsistent with the object in view and the conveyance itself to hold that the city had parted with all its title, and if Long has trespassed upon the territory outside of the right of way as defined in the opinion delivered, the action for the tort is in the city of Louisville, and not in the appellee. This is upon the idea that Long has no title, or one inferior to that held by the city; but as between these parties, Long and the city, no such question being presented by the record, this opinion is not intended to affect the rights of either. The city is not, in fact, before the court, and is asserting no claim in antagonism to any of the parties to this record. It is no argument, of a convincing character, at least, that the right of way might be limited to a less extent than that adjudged, but, on the contrary, it is apparent from the record that the limit to this right of way has been fixed as the parties intended it should be. The railway company is not,

in fact, relying upon the strength of its own title, but is attempting to recover in the name of the party who, after the question of title has been investigated, is thought to be vested with the fee. It is insisted that the city of Louisville should be made a party, and the plaintiff permitted to shelter under its title, when, under any rule of practice, the defendant could defeat (if without title in himself) the recovery sought by the plaintiff in showing a better title in the city. If the city should be made a party, you have the anomalous proceeding of a plaintiff in ejectment or to quiet title, bringing into the case, when it is without title, two parties, and each permitted to recover distinct parcels of the land sought to be recovered by the plaintiff. Wade Hampton's heirs would recover under their title, and the city of Louisville under its title, if no title existed with the defendant, the result being that a plaintiff in ejectment could not be defeated, although without title, as long as some other party could be found who had a title, and was made a party to the litigation.

Petition overruled.