Opinion issued August 13, 2024



In The

# Court of Appeals

For The

## First District of Texas

———————————

### NO. 01-23-00004-CV

———————————

**HILARY ROCHELLE, Appellant/Cross-Appellee**

**V.**

**TRAVIS SERVICES GROUP, INC. AND TRAVIS COMPANY D/B/A PUROCLEAN SERVICES, Appellees/Cross-Appellants**

---

**On Appeal from the 269th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-53392**

---

### MEMORANDUM OPINION

Appellant/cross-appellee, Hilary Rochelle, challenges the trial court's judgment following a jury trial in the suit of appellees/cross-appellants, Travis Services Group, Inc. (Travis Services) and Travis Company d/b/a PuroClean Services (PuroClean) (collectively, Travis), against her for breach of contract. In

three issues, Rochelle contends that (1) the trial court erred by enforcing invalid constitutional liens against her homestead, (2) Travis failed to establish that its repair costs were reasonable and necessary, and (3) the trial court's legal conclusions as to the validity of the constitutional liens were not supported by legally and factually sufficient evidence.

In two issues on cross-appeal, Travis contends that the trial court erred by (1) refusing to authorize a foreclosure sale in its final judgment and (2) awarding prejudgment interest to Travis at five percent instead of eighteen percent and for an insufficient duration.

We affirm in part and reverse in part.

## Background

Rochelle owns a home in the Braeswood neighborhood of Houston, Texas. Michael Travis is the owner, president, and CEO of both Travis Services and PuroClean. Travis Services is in the reconstruction business, while PuroClean performs remediation work. After her home flooded during the Memorial Day Flood of May 2015, Rochelle retained PuroClean to perform remediation work. Travis acknowledges that Rochelle paid PuroClean's initial bill of $28,000 in June 2015.

In August 2015, Rochelle retained Travis Services to perform construction services on her home due to the flood damage and signed a Work Authorization detailing the work to be performed and payment terms. According to Travis, this

work was almost complete when Rochelle's home flooded again in the Tax Day Flood of April 2016. Travis Services submitted the necessary documentation to Rochelle's insurance company for approval of further remediation and reconstruction work, and Rochelle signed an authorization to this effect. Travis Services completed remediation work in April 2016 and submitted an invoice to Rochelle in the amount of $19,537.97. Though the parties continued to discuss the possibility of further repair work throughout the summer, ultimately neither Travis entity ever performed any additional work on Rochelle's home.

In late November or early December 2016, Michael Travis met with Rochelle to reconcile billing for all work completed through April 18, 2016 in an attempt to reach an agreement as to the remaining amount due. According to Travis, Rochelle claimed that she had not yet received the funds from her insurance company. Rochelle ultimately began ignoring communication attempts in December 2016. Thereafter, Travis made repeated demands for payment from January 2017 to April 2017, but Rochelle ignored these requests.

On April 24, 2017, Travis sent written pre-lien notifications and demands for payment to Rochelle. The demand from Travis Services sought $44,166.19 in damages, plus attorney's fees, expenses, and interest. PuroClean demanded $19,537.97, plus attorney's fees, expenses, and interest. Both entities filed liens against Rochelle's property on July 7, 2017, in the aforementioned amounts.

Travis filed suit against Rochelle in August 2017, asserting claims based on a sworn account, breach of contract, and quantum meruit. The lawsuit also sought attorney's fees, expenses, and pre- and post-judgment interest.

In September 2017, Rochelle filed an answer to Travis's suit, asserting general and verified denials, affirmative defenses, and other specific denials. Rochelle also asserted counterclaims against Travis for breach of contract and removal of invalid liens filed by both entities and sought attorneys' fees, costs, and pre- and post-judgment interest.

Travis filed an answer to Rochelle's counterclaim, including a general denial, objections to Rochelle's verified denial, specific denials, and raising the affirmative defense of promissory estoppel.

Both parties amended their pleadings. Rochelle ultimately added causes of action for Deceptive Trade Practices Act (DTPA) violations and fraudulent inducement. In response, Travis filed a Second Amended Original Answer in September 2018. Rochelle filed her Second Amended Answer, Verified Denial & First Amended Counterclaim on June 24, 2022, expounding on her DTPA claim.

The case was called to trial on July 25, 2022. Travis's case consisted of testimony from Michael Travis. After Travis rested its case, Rochelle moved for directed verdict as to her claim that Travis's liens were invalid. Rochelle argued that

Travis failed to meet the requirements to perfect either a constitutional or statutory lien. In denying the motion, the trial court noted:

> The cause of action related to the lien is [Rochelle's] cause of action. [She] [has] a cause of action to declare the lien invalid. [Travis] [doesn't] have -- I don't see any cause of action related to the lien in their petition that I am looking at.
>
> I see your allegation as to fraudulent lien. And I understand that you [Rochelle] also have a case-in-chief coming up. I understand it's a nuance. I don't see any cause of action to foreclose the lien. I don't see any cause of action on a -- a dec. action on a lien, anything related to a lien in their petition.

Rochelle's case-in-chief included her testimony and that of her expert witness. Thereafter, Rochelle renewed her motion for directed verdict as to the invalidity of Travis's liens. Ultimately, the trial court granted the motion as to the statutory liens but denied the motion as to the constitutional liens.[1]

Rochelle also presented a motion for directed verdict on damages, arguing that Travis failed to present evidence that their charges were reasonable and necessary. In response, Travis argued that not only did Michael Travis testify that his charges were reasonable and necessary, but Travis also presented sworn

---

[1] Two types of mechanic's liens exist under Texas law: the statutory mechanic's lien and the constitutional mechanic's lien. *Apex Fin. Corp. v. Brown*, 7 S.W.3d 820, 830 (Tex. App.—Texarkana 1999, no pet.) ("A statutory lien exists through compliance with applicable statutes, while a constitutional lien arises by virtue of the Constitution without the aid of the statutes.") (citations omitted); *see also* YOUNGBLOOD, *Mechanics' and Materialmen's Liens in Texas*, 26 SW. L. J. 665 (1972) (discussing differences in procedural steps original contractor must follow to create each type of lien).

affidavits from Michael Travis attesting that the services he provided were reasonable and necessary. Such affidavits accompanied Travis's lien applications and their petition. The trial court denied Rochelle's motion for directed verdict as to damages.[2]

Following deliberations, the jury rendered a verdict in favor of Travis. The trial court signed a final judgment in accordance with the jury's verdict on October 7, 2022. In its judgment, the trial court awarded $44,166.19 to Travis Services, plus prejudgment interest at five percent. The judgment awarded $19,537.97 to PuroClean, plus prejudgment interest at five percent. The judgment further awarded attorney's fees jointly to Travis Services and PuroClean in the amount of $71,400, with additional fees to be awarded in the event of an unsuccessful appeal by Rochelle. Finally, the judgment awarded post-judgment interest at a rate of five percent.

Both parties filed post-judgment motions. First, Travis filed a motion to modify the judgment, arguing that the trial court should have awarded prejudgment interest at a rate of eighteen percent per year, rather than five percent. Rochelle filed a Motion for Entry of Judgment, Motion to Disregard Certain Jury Findings and

---

[2]  The trial court also denied Travis's motion for directed verdict on Rochelle's DTPA claim based on the statute of limitations and granted Rochelle's motion for directed verdict as to any construction trust fund claims. The parties do not challenge either of these rulings on appeal.

Motion for Judgment Notwithstanding the Verdict, or in the alternative, Motion for New Trial. In her motion, she asked the trial court to enter a judgment that Travis's statutory liens were invalid and award her attorneys' fees on that issue. Rochelle also sought judgment on her claims to remove Travis's constitutional liens and asked the trial court to disregard the jury's findings regarding Travis's breach-of-contract damages because Travis failed to demonstrate the reasonableness and necessity of its costs. The trial court denied both parties' motions, and this appeal and cross-appeal followed.

## Rochelle's Appeal

### A. Validity of Liens

In her first issue, Rochelle argues that appellees' constitutional liens were invalid and thus should have been removed by the trial court. In her third issue, Rochelle challenges the legal and factual sufficiency of the evidence supporting the trial court's findings of fact and conclusions of law with respect to the validity of the constitutional liens. Rochelle raised these issues in her motion for directed verdict following Travis's case-in-chief, again when she re-urged her motion following her own case-in-chief, and in her Motion for Entry of Judgment, Motion to Disregard Certain Jury Findings and Motion for Judgment Notwithstanding the Verdict, or in the alternative, Motion for New Trial.

On appeal, Rochelle contends that the property was her homestead, and appellees did not meet the specific requirements for perfecting a lien on a homestead. In response, appellees argue that Rochelle failed to establish the property was her homestead or, alternatively, that she abandoned her homestead.

## 1. Standard of Review

In her first issue, Rochelle does not specify whether she challenges the trial court's denial of her motion for directed verdict as to the invalidity of the liens, or the denial of her motion for judgment notwithstanding the verdict. We apply the same legal sufficiency standard of review to either motion. *Iroh v. Igwe*, 461 S.W.3d 253, 261 n.3 (Tex. App.—Dallas 2015, pet. denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005) ("The test for legal sufficiency should be the same for summary judgments, directed verdicts, judgments notwithstanding the verdict, and appellate no-evidence review.")).

When reviewing the legal sufficiency of the evidence, we review the evidence in the light most favorable to the trial court's findings and assume that the court resolved all conflicts in accordance with its judgment. *City of Keller*, 168 S.W.3d at 820. We credit evidence favorable to the trial court's findings if reasonable factfinders could do so, and we disregard contrary evidence unless reasonable factfinders could not. *See id.* at 827. Evidence is legally insufficient if (1) there is a complete absence of a vital fact, (2) the court is barred by rules of law or evidence

from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810. The ultimate test is whether the evidence would enable reasonable and fair-minded people to reach the answer under review. *Id.* at 827.

In her third issue, Rochelle also challenges the factual sufficiency of the evidence supporting the trial court's determination that Travis had valid constitutional liens on her property. We construe this as a challenge to the factual sufficiency of the evidence supporting the trial court's denial of Rochelle's motion for directed verdict and post-trial motions on the issue of homestead (essentially, the trial court's determination that Rochelle did not conclusively establish homestead). *See Gilmore v. Dennison*, 115 S.W.2d 902, 902 (1938) (homestead question is fact issue); *Kendall Builders, Inc. v. Chesson*, 149 S.W.3d 796, 808 (Tex. App.—Austin 2004, pet. denied) (citing *Gilmore*).

In a factual sufficiency review, we consider all record evidence in a neutral light, setting aside the challenged portion of the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Lifemark Corp. v. Merritt*, 655 S.W.2d 310, 315 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.) (citing *Parrish v. Hunt*, 331 S.W.2d 304, 305 (Tex. 1960)).

## 2. Homestead Lien Requirements

The Texas Constitution has long protected homeowners against the forced sale of their homesteads. *See* TEX. CONST. art. XVI, § 50(a); *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542, 545 (Tex. 2016). Certain exceptions apply for debts specifically enumerated in the constitution, including debts incurred for work or services performed on the homestead. TEX. CONST. art. XVI, § 50(a)(5). Because the homestead protection does not extend to debts incurred for improvements made to the homestead, laborers may secure valid mechanic's and materialman's liens against the homestead on which the work was performed, but only by following certain constitutional and statutory procedures. *Id.* § 50(a)(5); TEX. PROP. CODE § 53.254. Contractors like Travis making improvements on a homestead must comply with the requirements found in section 53.254 of the property code in order to attach a valid lien. TEX. PROP. CODE § 53.254. Only upon satisfaction of those requirements may a contractor attempt to force the sale of a homestead by judicial foreclosure. *Id.* § 53.154.

To fix a lien on a homestead, the property code requires that (1) the person who is to furnish material or perform labor and the owner must execute a written contract setting forth the terms of the agreement; (2) the contract must be executed prior to the furnishing of materials or the performance of labor; (3) if the owner is married, the contract must be signed by both spouses; (4) if the contract is made by

an original contractor, the contract must inure to the benefit of all persons who perform labor or furnish materials for the original contractor; and (5) the contract must be filed with the county clerk of the county in which the homestead is located. *Id.* § 53.254. Rochelle contends that appellees did not meet the fifth and final requirement because they did not attach a copy of the contract to the filed lien.[3]

The Texas Constitution also has requirements for attaching a lien on a homestead. *See* TEX. CONST. art. XVI, § 50(a)(5). At issue here is section 50(a)(5)(D), which requires that the contract for the work and material be executed by the owner "only at the office of a third-party lender making an extension of credit for the work and material, an attorney at law, or a title company." *Id.* § 50(a)(5)(D).

"Historically, constitutionally noncompliant homestead liens were absolutely void." *Wood*, 505 S.W.3d at 545 (citing *Tex. Land & Loan Co. v. Blalock*, 13 S.W.

---

[3] Travis argues that the requirements in section 53.254 do not apply, claiming that "the Legislature has no power to impose additional requirements on constitutional liens." To the contrary, the Constitution provides that "[m]echanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens." TEX. CONST. art. XVI, § 37. Further, Texas courts have held that a contractor seeking to create a constitutional lien on residential homestead property for repair or renovation work on existing improvements (as is the case here) must satisfy both the constitutional requirements and the requirements of section 53.254. *CVN Grp., Inc. v. Delgado*, 47 S.W.3d 157, 164 (Tex. App.—Austin 2001), *rev'd on other grounds*, 95 S.W.3d 234 (Tex. 2002); *see also Fraser v. Baybrook Bldg. Co.*, No. 01-02-00290-CV, 2003 WL 21357316, at *3 (Tex. App.—Houston [1st Dist.] Jun. 12, 2003, pet. denied) (mem. op.); *Cavazos v. Munoz*, 305 B.R. 661 (S.D. Tex. 2004) (discussing in detail the history of statutory and constitutional mechanic's liens in Texas and the requirements for each).

12, 13 (Tex. 1890)). "A mortgage or lien that is void because it was illegally levied against homestead property can never have any effect, even after the property is no longer impressed with the homestead character." *Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 130 (Tex. 1991); *see also Inge v. Cain*, 65 Tex. 75, 79 (1885) (stating that in context of mortgages against homestead, "what is never valid, is always void").

### 3. Proof of Homestead

The homestead exemption is construed liberally to further its purposes. *Hankins v. Harris*, 500 S.W.3d 140, 145 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *Thomas v. Graham Mortg. Corp.*, 408 S.W.3d 581, 588 (Tex. App.—Austin 2013, pet. denied) (citing *Kendall Builders*, 149 S.W.3d at 807 ("Because constitutional homestead rights protect citizens from losing their homes, courts liberally construe constitutional and statutory homestead provisions to protect the homestead.")). No specific writing is needed to claim the constitutional protection afforded to homesteads, but Rochelle bore the initial burden of establishing "(1) overt acts of homestead usage and (2) the intention to claim the property as a homestead." *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 159 (Tex. 2015); *Hankins*, 500 S.W.3d at 145.

Once a property is established as a homestead, the burden shifts to the party challenging a homestead to prove termination of homestead status "by abandonment,

alienation, or death." *Zorrilla*, 469 S.W.3d at 160 (quoting *Wilcox v. Marriott*, 103 S.W.3d 469, 472 (Tex. App.—San Antonio 2003, pet. denied)).

Whether a property is a homestead is a question of fact. *Id.* Because Rochelle did not request a jury question on the issue of homestead, it is waived unless she conclusively established the Braes Bayou residence as her homestead. *Id.*

### 4. Analysis

Here, Travis does not contest that it did not meet all of the constitutional or statutory requirements for perfecting a lien on a homestead. Rather, Travis argues that satisfaction of those requirements was not necessary because Rochelle did not conclusively establish the residence as her homestead. *See Cavazos v. Munoz*, 305 B.R. 661, 677 (S.D. Tex. 2004) ("With respect to non-homestead residential construction projects, the constitutional and statutory preconditions necessary to create a valid constitutional lien are inapplicable.") (citing TEX. CONST. art. XVI, § 50(a)(5); TEX. PROP. CODE § 53.254; ELDON J. YOUNGBLOOD, YOUNGBLOOD ON TEXAS MECHANICS' LIENS § 1002.1 (2d ed. 1999)). We agree.

In support of her argument that she conclusively established the subject property as her homestead, Rochelle points to her testimony that she lived in the home from 1989 until Hurricane Harvey in 2017 and raised her children there. She also notes her testimony, as well as testimony from Michael Travis, that they discussed reconstructing the rear wing of the home first so that Rochelle could live

13

in it while the remaining repairs were completed, and Travis did so. Rochelle further points to the fact that the contract between Rochelle and Travis Services notes she was residing at the home at the time of execution.

On the other hand, the record is silent as to whether Rochelle filed a homestead exemption for the subject property. *See Salomon v. Lesay*, 369 S.W.3d 540, 550 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (noting that although homeowner "can benefit from constitutional homestead exemption without any particular writing," filing official designation of homestead with county clerk "provides prima facie evidence of intent to claim property as a homestead and puts the world on notice to that effect"). The record also does not inform us whether Rochelle owned any other residential property, lived elsewhere for any portion of the relevant time period, or intended to establish the subject property as her homestead. "Merely taking residence in a home for an unspecified length of time is not sufficient to conclusively establish the property as a homestead." *Zorrilla*, 469 S.W.3d at 160.

While Rochelle is correct that no magic language or specific writing is required to conclusively establish homestead, *Dodd v. Harper*, 670 S.W.2d 646, 649 (Tex. App.—Houston [1st Dist.] 1983, no writ), we are mindful that we may not assume facts to support a claim of homestead against the validity of an existing debt or lien. *Roberson v. Home Owners' Loan Corp.*, 147 S.W.2d 949, 952 (Tex. App.—

Dallas 1941, writ dism'd judgm't cor.). Likewise, use of the word "home" is not necessarily synonymous with "homestead." *Zorrilla*, 469 S.W.3d at 160. For these reasons, on this record, we cannot conclude that Rochelle met her burden to conclusive establish the property as her homestead. *See id.* We determine that the evidence is legally and factually sufficient to support the trial court's judgment. *See Kendall Builders, Inc.*, 149 S.W.3d at 810 (discussing legal and factual sufficiency in homestead context).

We overrule Rochelle's first and third issues.

## B. Reasonableness and Necessity of Repairs

In her second issue, Rochelle argues that the evidence is legally insufficient to support the jury's findings on damages. Specifically, Rochelle argues that Travis failed to demonstrate the reasonableness and necessity of its costs.

In response, Travis argues that Rochelle did not request a jury question on reasonableness or necessity or object to the charge. Travis also contends that Rochelle cites law concerning remedial damages, not benefit-of-the-bargain damages. Lastly, Travis argues that there was legally sufficient evidence to support the jury's damages award.

As Travis points out, "it is the court's charge, not some other unidentified law, that measure the sufficiency of the evidence when the opposing party fails to object to the charge." *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000). Here, the court's

charge read as follows: "What sum of money, if any, if now paid in cash, would fairly and reasonably compensate [each business] for its damages, if any, that resulted from Hilary Rochelle's failure to comply?" Though Rochelle objected to Questions 11 and 13 on the basis that there was no evidence of the reasonableness or necessity of each Travis entity's damages, Rochelle did not object to the form of the question or propose a different question, and the trial court overruled her objection.

The case of *Shows v. Man Engines & Components, Inc.*, 364 S.W.3d 348 (Tex. App.—Houston [14th Dist.] 2012), *aff'd on other grounds*, 434 S.W.3d 132 (Tex. 2014), is instructive. In that case, the jury awarded damages to a yacht owner against the manufacturer and a subsidiary for engine replacement costs. *Id.* at 350–51. On appeal, the manufacturing entities argued that the owner was not entitled to recover the damages awarded by the jury because there was no evidence that they were reasonable and necessary replacement costs. *Id.* at 357. The court first noted that the jury charge did not require the damages found by the jury to be reasonable and necessary costs of repair and replacement. *Id.* Further, no party objected to the trial court's failure to charge the jury on such a requirement. *Id.* The court therefore determined that it must "measure[] the sufficiency of the evidence using the charge given, even if the charge does not correctly state the law." *Id.* (citing *Osterberg*, 12

S.W.3d at 55; *Hirschfeld Steel Co. v. Kellogg Brown & Root, Inc.*, 201 S.W.3d 272, 283–86 (Tex. App.—Houston [14th Dist.] 2006, no. pet.)).

The *Shows* court ultimately concluded that "the alleged absence of any evidence to support a finding that the damages awarded were reasonable and necessary costs is not a ground that would have vitiated the verdict or would have prevented affirmance of the judgment if the trial court had rendered judgment on the verdict." *Id.* at 358 (citing TEX. R. APP. P. 38.2(b)(1)). Just as in *Shows*, here, the jury charge did not include an instruction or question on the reasonableness or necessity of Travis's charges, and Rochelle did not object to any such omission. The jury here awarded the exact amounts outlined in the estimates prepared by Travis, thus determining that those would fairly and reasonably compensate Travis for Rochelle's failure to comply with the parties' agreement. *See Shows*, 364 S.W.3d at 357–58; *see also United Nat'l Ins. Co. v. AMJ Invs., LLC*, 447 S.W.3d 1 (Tex. App.—Houston [14th Dist.] 2014, pet. dism'd)[4] (holding that evidence supporting jury's finding of costs to repair or replace property is not legally insufficient where jury was not instructed to find "the reasonable and necessary" costs, citing *Shows*).

---

[4] In *United National Insurance Co. v. AMJ Investments, LLC*, the court discussed and distinguished the case of *McGinty v. Hennen*, 372 S.W.3d 625 (Tex. 2012) (per curiam), which Rochelle relies heavily upon in her briefing to this Court. *McGinty* concerned the evidence necessary to support an award of remedial damages, not benefit-of-the-bargain damages, as are claimed here. Further, the jury in *McGinty* was asked to find "the reasonable and necessary cost to repair"; here, and in *AMJ Investments*, the jury was not.

17

We overrule Rochelle's second issue.

## Travis's Cross-Appeal

### A.    Foreclosure Sale

In its first issue on cross-appeal, Travis argues that the trial court erred by failing to authorize a foreclosure sale of Rochelle's property. Travis contends that after the trial court found that Travis possessed valid constitutional liens on the property, it lacked discretion to deny foreclosure. In response, Rochelle contends that Travis did not plead an affirmative claim for foreclosure.

Travis points us to *Crawford Services, Inc. v. Skillman International Firm, L.L.C.*, a case concerning a statutory mechanic's lien. 444 S.W.3d 265 (Tex. App.—Dallas 2014, pet. dism'd). In that case, Crawford established a debt owed by Skillman and perfected a statutory mechanic's lien, but in Crawford's subsequent suit to enforce the lien the trial court denied foreclosure, reasoning that the language of section 53.154 was permissive, not mandatory. *Id.* at 269. On appeal, the Dallas Court of Appeals disagreed, holding that "once the trial court determined that the lienholder had a valid debt and a perfected mechanic's lien, it did not have discretion under section 53.154 to deny a judgment of foreclosure and order of sale of the property subject to the lien." *Id.* at 271 (citing *Seeds v. Edgerton*, 209 S.W.2d 987, 989 (Tex. App.—Eastland 1948, no writ) (stating that under Texas law when plaintiff proves valid mechanic's lien on property, plaintiff "entitled to a

foreclosure" of that lien)). The *Crawford* court stated that interpreting the statute to afford the trial court unlimited discretion would "introduce uncertainty into the mechanic's lien enforcement process and defeat the purpose for enacting the mechanic's lien statutes: to provide security to those who supply labor and materials for improving the value of another's land." *Id.*

In response, Rochelle does not direct us to any case law supporting her position that Travis needed to plead a separate cause of action for foreclosure; instead, she attempts to distinguish *Crawford* on its facts.[5] First, Rochelle notes that *Crawford* concerned a statutory lien, not a constitutional lien. She fails to explain why this distinction is material. To the contrary, "the mechanic's lien contemplated by the statutes is indistinguishable from the lien provided for in the Constitution . . . . In other words, all mechanic's liens have their source in Article 16, Section 37 of the Constitution; this provision establishes the lien to which the statutes refer." *Cavazos*, 305 B.R. at 679–80 (citing *Strang v. Pray*, 35 S.W. 1054, 1056 (Tex. 1896); *Apex Fin. Corp. v. Brown*, 7 S.W.3d 820, 830 (Tex. App.—Texarkana 1999,

---

[5] Rochelle also cites *Nova Mud, Inc. v. Staley*, 583 S.W.3d 728 (Tex. App.—El Paso 2019, pet. denied), purportedly for the position that a lienholder may either sue the other party *in personam* for breach of contract, or instead foreclose on the collateral directly in a judicial proceeding and force the sale of the collateral at auction to satisfy the debt. Rochelle suggests that these options are mutually exclusive, citing *Staley*, 583 S.W.3d at 735. Contrary to Rochelle's argument, the plaintiff in *Crawford* filed a breach of contract action and sought foreclosure in the same proceeding, just as Travis does here. *See* 444 S.W.3d at 266.

no writ); YOUNGBLOOD, *Mechanics' and Materialmen's Liens in Texas*, 26 Sw. L. J. 665 (1972)).

Rochelle also contends that unlike this case, *Crawford* concerned "an action to foreclose a lien." But *Crawford* merely notes that the plaintiff there "sued Skillman for breach of contract and to foreclose on the mechanic's lien." 444 S.W.3d at 266. The same can be said here—in Travis's complaint, under the heading "Breach of Contract – Services Performed and Unpaid," Travis states: "Plaintiffs have taken all steps necessary to assert their respective constitutional liens and underlying debts remain unpaid, Plaintiff[]s therefore assert their respective rights to bring a suit of lien foreclosure against the Property itself."

Lastly, Rochelle argues that *Crawford* concerned a bench trial while the case at issue involved a jury trial and because the jury was the factfinder, Travis "would have had to seek factual findings to support a lien foreclosure claim (which they did not plead) and present corresponding questions of fact to the jury." Again, Rochelle cites no authority for this assertion. As Travis points out, this is incorrect. "Because a constitutional mechanic's lien is 'self-executing' and 'automatic,' it is not necessary for the trial court to submit any issue relating to the lien to the jury." *San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82, 107 (Tex. App.—San Antonio 2003, pet. denied) (quoting *Weimhold v. Hyde*, 294 S.W. 899, 900 (Tex. App.— Amarillo 1927, no writ)).

Here, Travis demonstrated valid liens on Rochelle's property for the work done by each Travis entity, and the jury awarded damages to Travis in the exact amounts of the liens. We agree with Travis that the trial court therefore lacked discretion to deny foreclosure. *Crawford*, 444 S.W.3d at 268 (holding that "[t]o prevail on its claim [to enforce constitutional or statutory lien], the lienholder must prove it performed the labor or furnished the materials and the debt is valid") (citing *Wallace Roofing, Inc. v. Benson*, No. 03-11-00055-CV, 2013 WL 659757, at *12 (Tex. App.—Austin Nov. 27, 2013, pet. denied) (mem. op.); *O'Connor*, 115 S.W.3d at 107)).

We sustain Travis's first issue on cross-appeal. We remand this case to the trial court with instructions to render a judgment of foreclosure of Travis's constitutional liens and an order of sale of the property subject to the liens. *See id.* at 271.

## B.  Prejudgment Interest

In its second issue on cross-appeal, Travis argues that the trial court erred in awarding prejudgment interest at a rate of five percent annually instead of eighteen percent pursuant to the Prompt Payment Act. *See* TEX. PROP. CODE § 28.004. In a related sub-issue, Travis alleges that the trial court should have awarded interest through October 7, 2022 (the date of judgment) rather than August 31, 2022. In response, Rochelle contends that the trial court's judgment was correct because

21

Travis failed to plead recovery under the Prompt Payment Act or request a jury finding on the issue.

## 1.    Interest Rate

The Prompt Payment Act provides that an owner of real property, who receives a written request for payment from a contractor for an amount that is allowed under a contract for properly performed work, must pay the amount, less any amount withheld as authorized by statute, not later than the thirty-fifth day after the date the owner receives the request. TEX. PROP. CODE § 28.002(a). Section 28.004, captioned "Interest on Overdue Payment," provides as follows:

(a)    An unpaid amount required under this chapter begins to accrue interest on the day after the date on which the payment becomes due.

(b)    An unpaid amount bears interest at the rate of 1 1/2 percent each month.

(c)    Interest on an unpaid amount stops accruing under this section on the earlier of:

(1)    the date of delivery;

(2)    the date of mailing, if payment is mailed and delivery occurs within three days; or

(3)    the date a judgment is entered in an action brought under this chapter.

*Id.* § 28.004.

Prejudgment interest is recoverable as a matter of right when an ascertainable sum of money is found due and payable at a definite date before judgment. *Jarrin v. Sam White Oldsmobile Co.*, 929 S.W.2d 21, 24 (Tex. App.—Houston [1st Dist.] 1996, writ denied); *see, e.g., Henry Bldg., Inc. v. Milam*, No. 05-99-01400-CV, 2001 WL 246882, at *3–4 (Tex. App.—Dallas Mar. 14, 2001, pet. denied) (holding that trial court erred by awarding contractor six-percent-per-year prejudgment interest instead of one and one-half percent per month prejudgment interest under section 28.004(b)). A general prayer for prejudgment interest sufficiently invokes a statutory right to such interest. *Benavidez v. Isles Constr. Co.*, 726 S.W.2d 23, 25 (Tex. 1987); *Olympia Marble & Granite v. Mayes*, 17 S.W.3d 437, 441 (Tex. App.—Houston [1st Dist.] 2000, no pet.). Because the plaintiff is entitled to prejudgment interest based on a prayer for general relief alone, a plaintiff need not specifically plead prejudgment interest if the claim falls within the scope of a statute authorizing prejudgment interest. *Olympia Marble & Granite*, 17 S.W.3d at 441; *see also Talley Constr. Co. v. Rodriguez*, 01-03-01147-CV, 2006 WL 908180, at *11 (Tex. App.—Houston [1st Dist.] Apr. 6, 2006, no pet.) (mem. op.) (holding that trial court did not err in awarding claimant eighteen percent per year in prejudgment interest under section 28.004(b) because claimant's pleading included prayer for general relief).

While Rochelle argues that Travis has waived this issue by failing to plead recovery under the Prompt Payment Act or submit the question to the jury at trial,

this court expressly rejected an identical argument in *Gordon v. Leasman*, 365 S.W.3d 109 (Tex. App.—Houston [1st Dist.] 2011, no pet.). *See also Talley Constr. Co.*, 2006 WL 908180, at *11 (citing *Olympia Marble & Granite*, 17 S.W.3d at 441). Here, Rochelle failed to pay Travis for the remediation and reconstruction work it performed as authorized on Rochelle's residence, even after Travis sent her multiple written invoices and demands for payment. *See* TEX. PROP. CODE § 28.002. Travis's written demands referenced the Prompt Payment Act. Travis also demanded prejudgment interest at a rate of one-and-one-half percent per month in its original complaint and amended pleadings thereafter. *See* TEX. PROP. CODE § 28.004(b) (establishing a one-and-one-half percent prejudgment interest rate). Because Travis's claim is for an overdue payment that a real property owner owed it for contracting work, it falls within the provisions of section 28.002(a), and the trial court should have awarded prejudgment interest at one and one-half percent per month as provided in section 28.004(b). *See id.* Accordingly, we remand this case to the trial court with instructions to modify the rate of prejudgment interest in the judgment to one and one-half percent per month (or eighteen percent annually).

### 2. Duration of Interest

The Prompt Payment Act governs interest on an unpaid claim only to the date of judgment. *See* TEX. PROP. CODE § 28.004(c); *Gordon*, 365 S.W.3d at 119. Travis argues that the trial court should have awarded prejudgment interest through October

24

7, 2022, the date of judgment, not August 31, 2022.[6] We agree. We therefore remand this case to the trial court with instructions to modify the judgment to reflect an award of prejudgment interest through October 7, 2022.

**Conclusion**

We sustain Travis's first issue on cross-appeal and remand this case to the trial court with instructions to render a judgment of foreclosure of Travis's liens and order a sale of Rochelle's property subject to the liens. We likewise sustain Travis's second issue on cross-appeal and remand this case with instructions to modify the trial court's judgment to reflect an award of prejudgment interest at a rate of one-and-one-half percent a month (or eighteen percent annually), ending on October 7, 2022. We affirm the trial court's judgment in all other respects.

Amparo Monique Guerra
Justice

Panel consists of Justices Landau, Countiss, and Guerra.

---

[6] The order states: "IT IS THEREFORE ORDERED by the court that Travis Services Group, Inc. have and recover actual damages from Hilary Rochelle the sum of $44,166.19, plus prejudgment interest calculated from 35 days after January 1, 2017, to the date of judgment at the rate of 5% as of August 31, 2022."

As to PuroClean, the order states: "IT IS THEREFORE ORDERED by the court that Travis Company, d/b/a Puroclean Services have and recover actual damages from Hilary Rochelle the sum of $19,537.97, plus prejudgment interest calculated from 35 days after May 16, 2016, to the date of judgment at the rate of 5% as of August 31, 2022."

25